UTICA,
August, 1829.

Russell
v.
Nicoll.

New trial granted.

---

R. M. & J. RUSSELL *vs.* F. H. & H. W. NICOLL.

A contract made in the city of New-York for the sale of 500 bales of cotton, to be delivered *on its arrival* at New-York from New-Orleans, at any time between the date of the contract, which was the ninth day of February, and the first day of June thereafter, to be paid for in cash on delivery, the cotton to be weighed, and two per cent. tare to be allowed, is an executory contract, and the title to the cotton does not pass. The vendors are not chargeable for the non-delivery of the cotton *until its arrival* at New-York; and the specification of the time is only a limitation fixing the period beyond which neither of the parties are bound by the contract, and not an agreement that the cotton shall at all events be delivered by the specified day.

A party contracting for the sale and delivery of a large quantity of any particular item of merchandise, (for instance 500 bales of cotton,) *on its arrival* at a particular port, is not bound to deliver a portion only of the article, the whole not having arrived. The vendee not being bound to *receive*, the vendor is not obligated to *deliver* a quantity less than the whole ; the obligation being reciprocal.

A signing of a note or memorandum of a bargain on the sale of goods, wares and merchandise by the *vendors* alone, is a sufficient compliance with the requirements of the statute of frauds.

The word *sold* at the commencement of such a writing, means, *contracted to sell.*

THIS was an action of assumpsit, tried at the New-York circuit, in March, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiffs claimed damages for the non-delivery of a quantity of cotton alleged to have been purchased by them of the defendants. The contract between the parties was made on the 9th February, 1825, at New-York, and is in these words : "Sold by Daniel Rapelye, for our account, to R. M. & J. Russell, five hundred bales of cotton, at sixteen and an half cents per pound. Said cotton was purchased for our ac. at Huntsville, and is to be delivered, on its arrival at this port from New-Orleans at any time between the present date and the first day of June next, and the amount to be cash on delivery ; to be re-weighed and two per cent. tare allowed. New-York, February 9, 1825." (Signed) ' Fran-

cis H. Nicoll & Co.' The cotton, at the time of the sale, was at Huntsville, in the state of Alabama. The average time of a passage from New-Orleans to New-York is twenty days, and forty days would be a very long passage. Eleven bales of Alabama cotton, belonging to the defendants, arrived at New-York before the 1st June, were demanded by the plaintiffs, and an offer of payment made to the defendants two or three days previous to the 1st June, who refused to deliver the same, saying they would not embarrass the contract by the delivery of a part; that unless the whole of the 500 bales arrived before the 1st June, they were not bound to deliver any part of the cotton. The price of Alabama cotton in New-York, from about the middle of April to the 1st of June, fluctuated between 23 and 25 cents per pound. The average weight of a bale of such cotton is 350 pounds.

The plaintiffs offered to prove, that on the 21st day of June, they offered to accept and receive the cotton. This evidence was objected to and rejected, and the plaintiffs excepted to the decision of the judge. The plaintiffs having rested, the defendants' counsel moved for a nonsuit, insisting that the agreement to deliver the cotton was conditional, depending upon the contingency of its arrival at the port of New-York on or before the first day of June; that it was an entire contract for the delivery of the whole quantity of 500 bales, and that consequently the defendants were not bound to deliver, nor the plaintiffs to accept a less quantity than the whole; and that the plaintiffs, not having offered any evidence of the arrival of the whole quantity, they were not entitled to recover. The judge decided that the plaintiffs were bound to prove that the whole quantity had arrived at New-York on or before the first day of June, to entitle them to a recovery; and that they had not offered sufficient evidence to justify him in submitting the cause to the jury; whereupon he nonsuited the plaintiffs, who excepted to his decision. A motion was now made to set aside the nonsuit.

*T. Fessenden*, for plaintiffs. The defendants were bound to deliver the cotton at New-York by the first of June *at all events*. In determining the import of a contract, a court will

regard the situation of the parties, and the circumstances under which they act at the time it is made. (2 Barn. & Cres. 636. 2 Cowen, 228. 8 Mass. R. 214. 10 id. 384.) The cotton was at Huntsville; it was to be transported to New-Orleans, and thence to New-York; the sale was made; and the defendants stipulated to deliver it *on its arrival* at the port of New-York: but as that was too indefinite, the plaintiffs required that a time should be specified; and the defendants further stipulated that it should be delivered on or before the first day of June. The agreement *to deliver* applies as well to *the time* specified, as to *the arrival* of the cotton; and if so, the meaning of the contract is, that the cotton is to be delivered on its arrival, *and* it is to be delivered between the date of the contract and the first day of June; or, in other words, it shall be delivered on its arrival, which arrival shall be between the date of the contract and the first day of June. Unless this construction be adopted, there is no reciprocity in the contract. If cotton rose in market, the defendants might sell at New-Orleans, and thus prevent its arrival in New-York; on the happening of which event alone, according to their construction, they were bound to deliver. If it fell in market, they could make its arrival sure; for three voyages to and from New-Orleans might have been performed between the date of the contract and the 1st June. In *Boyd v. Siffkin*, (2 Camp. 326,) and in the case mentioned in the note in that page, the general words *on arrival* are construed as a condition precedent; but in those cases there was no *time* specified for the delivery, and the subject matter was as much beyond the control of the vendor as of the vendee. Here time is specified, and the article completely under the control of the vendor.

The evidence produced by the plaintiffs, was *equivalent* to proof of the arrival of the cotton previous to the first day of June. It was shewn that a voyage between New-Orleans and New-York was ordinarily performed in 20 days; the cotton might have been transported; in fact a portion of this very cotton arrived previous to the first of June. The plaintiffs could not have proved more, had the whole of the cotton arrived at New-York, unless the defendants had seen fit

to apprise them of the fact.   In cases of this kind, where the
facts rest peculiarly within the knowledge of the opposite
party, slight evidence is sufficient to establish a *prima facie*
case.   The jury would have had the right to presume that
the arrival had been prevented by the act or omission of the
defendants ; and if so, the rights of the plaintiffs were the
same as if the arrival had taken place.   (3 Camp. 274.)

UTICA,
August, 1829.

Russell
v.
Nicoll.

The plaintiffs were entitled to recover for the eleven bales
which did *arrive.*   In this respect, the contract should be con-
sidered *distributive;* otherwise, if 499 bales had arrived and
the remaining one had been missing, the defendants would
have been relieved from the contract.   Besides, the sale was
absolute and the property passed, although the plaintiffs were
not bound to pay until actual delivery.   Such sales are re-
cognized as good.   (2 Comyn on Cont. 210, 230.   Touch-
stone, 224.   Noyes' Maxims, 88.   3 Camp. 426.)   If the sale
was absolute, the plaintiffs were entitled to recover.

*D. B. Ogden* and *W. Slosson,* for defendants.   The sale
was conditional, not absolute.   The note or memorandum
is in the usual form of a broker's memorandum of sale, and is
like the case in 2 Camp. 320, where the word *sold* was ad-
judged to mean *contracted to sell.*   Whenever any thing re-
mains to be done, the contract is of necessity executory, al-
though the words used may be *in præsenti,* and in such cases
the title to the property, which is the subject matter of the
contract, does not pass.   (15 Johns. R. 349.   6 Cowen, 250.)

The arrival of the cotton was a condition precedent ; it was
to be weighed, and the delivery and the payment were to be
simultaneous acts.   The contract, therefore, was executory,
and the plaintiffs were bound to aver and prove the arrival
of the cotton.   Had the cotton been lost in its *transit* from
New-Orleans, the defendants would have been compelled to
bear the loss, and a better test cannot be applied to determine
the question of sale or no sale.   If, however, there was a sale
the plaintiffs have mistaken their remedy ; their action should
have been *trover.*

The sale was conditional.   The cotton was at Huntsville,
on the head waters of the Tennessee, a river not at all times

UTICA
August, 1829.

Russell.
v.
Nicoll.

navigable ; the contract accordingly provided for the contingency, that the cotton might not arrive.  The agreement is, that *on its arrival* at the port of New-York, it shall be delivered.  The specification of time in the contract, was to fix a limit to the obligations of the parties ; a definite period, beyond which neither should be bound.  It is not a stipulation that at all events the cotton should arrive by the first of June, but an agreement on the one part to deliver, and on the other. to receive, if the cotton did arrive by that day.  The case in 2 Campbell, 326, 7, 8, is decisive of this question.  There the sale was of a quantity of hemp *on arrival*, per a certain ship ; the ship arrived, but brought no hemp ; and it was holden that as none arrived, the contract was at an end.  In the case in Campbell, the purchaser was bound to receive the article whenever it arrived ; here the plaintiffs were bound to take it, if it arrived before the first of June.

As to the eleven bales.  The defendants were not bound to deliver a part.  The agreement was made in reference to the entire quantity of 500 bales of cotton, and no agreement was made for the sale or purchase of a less quantity.  The plaintiffs could not have been compelled to take a quantity less than the whole, and the defendants therefore are not bound.  Either party had a right to insist upon a performance of the whole, and neither was bound to perform in part (3 Johns. R. 534.)

To entitle the plaintiffs to recover, they are bound to prove the arrival of the cotton: substantively to prove the fact, and not by inference.  No evidence was offered, that the nonarrival of the cotton was attributable to the defendants ; and no presumption will be indulged of bad faith on their part.  But had there been fraud on the part of the defendants, evidence of the fact could not have been received in the present action of assumpsit ; the remedy of the plaintiffs would have been an action of deceit, and so it was ruled by the king's bench in the case in Campbell.

The plaintiffs, in an action against them, might have objected the statute of frauds as a defence, not having signed any note or memorandum in writing of the bargain ; the agreement produced was signed only by the defendants.  If

the plaintiffs could not have been holden, the defendants are not bound; and though this objection was not taken at the circuit, the court will not now grant a new trial, if they perceive that the plaintiffs must be nonsuited on this ground. For the same reason that the plaintiffs were not bound to receive the cotton after the first of June, the defendants were not obligated to deliver it after that day. The evidence upon that subject, therefore, was properly excluded.

*H. Ketchum*, in reply. The sale was absolute, The cotton was identified and specifically sold, to wit, 500 bales purchased for the defendants at Huntsville. Had it been lost on its passage from New-Orleans, it is admitted that the defendants would have been obliged to have borne the loss; but this would have been as a consequence of the contract, and not because they remained owners. Having agreed to deliver it at New-York, they became their own insurers. This is according to the course of trade. The agreement was positive that the cotton should be delivered by the first day of June, and *sooner*, if it arrived before that day. Such must be the construction of the contract, and not as contended for on the other side, that there was no obligation on the defendants unless the cotton actually arrived before that day, or the grossest folly is imputable to the plaintiffs. The plaintiffs were bound to pay, and the defendants should be holden to deliver. The stipulation that the cotton should be weighed, did not render the contract executory, the sale being of a specific article; the weighing was provided for, solely to ascertain the quantity, and is not such a circumstance as prevents the passing of the property. (4 Taunton, 643.) The plaintiffs might have claimed the cotton at New-Orleans, and waived the delivery at New-York, the stipulation that it should be delivered there being entirely for their benefit. A subsequent sale, by the defendants, would have been void. The plaintiffs, therefore, at all events, were entitled to recover for the eleven bales; and they were entitled to recover for the non-delivery of the whole quantity, even upon the principles assumed by the defendants, for the property being in their

UTICA,
August, 1829.

Russell
v.
Nicoll.

possession at the time of the contract, and remaining under their control, to exonerate themselves from liability, they ought to have shewn its non-arrival at New-York.

*By the Court*, MARCY, J.    It was insisted on the argument that the contract declared on was within the statute of frauds, and void for not being reduced to writing, and signed as the statute directs.    This objection is not sustainable.    If the contract be within the statute, it is very clear that the signing by the defendants is a compliance with its requirement. (*Egerton* v. *Mathews and another*, 6 East, 307.    *Sanderson* v. *Jackson and another*, 2 Bos. Pul. 238.)

The main difficulty in this case is to determine the real character of the contract.    On the one hand, it is said to be, an actual and unconditional sale of the cotton, with a warranty that it should arrive at the port of New-York by the first of June, 1825 ; on the other, that it is an agreement to sell, on condition that it should arrive before that time.    It is very clear that if the plaintiffs had brought trover for the cotton, they could not have sustained their action.    The cases of *M'Donald* v. *Hewett*, (15 Johns. Rep. 349,) *Rapelye & Smith* v. *Mackie & others*, (6 Cowen, 25,) and *Shepley* v. *Davies and another*, (5 Taunt. 607,) are decisive authorities upon this point.    The contract was therefore executory and not executed.    Something was to be done before the title to the cotton passed from the defendants to the plaintiffs.    It was to be brought to New-York, weighed there, and paid for by the plaintiffs, after making the deductions stipulated in the agreement.    The defendants could retain the possession of it, even after it arrived in New-York, for the purpose of weighing it and until it was paid for by the plaintiffs.    The payment and delivery were dependant and simultaneous acts.    Apply to this property the test mentioned by Spencer, J. in the case of *M'Donald* v. *Hewett*, who would have been the sufferers if the cotton had been lost on its voyage from New-Orleans to New-York, or while at the latter place, before it had been weighed?    Beyond all question, the loss would have fallen on the defendants.

The contract being executory, it is important to determine what was to be done by the defendants towards executing it; because it is for not doing what they had stipulated to do, or cause to be done, that they are liable, if at all, to the plaintiffs for damages.   If the contract be executory, and such it evidently is, the same interpretation must be given to the word *sold* that was given to it in the case of *Boyd* v. *Siffkin*, (2 Campb. 326.)   It means *contracted to sell*.   Giving it this interpretation, I understand the contract to be an agreement on the part of the defendants to sell five hundred bales of cotton, purchased on their account at Huntsvill, and to deliver it on its arrival at New-York, at any time after making the contract, and before the first day of June thereafter.   It could not be delivered until its arrival, and its weight ascertained. The stipulation by the defendants to deliver it, cannot be considered absolute : it was conditional, and they are not chargeable for the non-delivery of it until the event had happened which the parties must have expected to happen before the delivery, viz. its arrival at the port of New-York.

It was urged on the argument that, by the agreement, the defendants had stipulated that the cotton should arrive within the period specified in the contract.   Such, I apprehend, was not the object of designating the time ; but, as the fulfilment of the contract, or, in other words, the actual transfer of the property contracted to be sold, depended upon the arrival of the cotton at New-York, an event not absolutely within the control of either party, and which might never happen, the period for its delivery, on condition of its arrival, was fixed, that the parties might know how long they were to remain under the stipulations of the contract.   If the cotton should not arrive by the first of June, the plaintiffs were not bound to receive and pay for it, on the one hand; nor on the other, were the defendants under an obligation to deliver it. This appears to me to have been the object of a specification of time in the contract.

Eleven bales of cotton did arrive within the specified time, and the defendants refused to deliver them, because the whole five hundred bales were not received.   Their views of the contract in this particular appear to me to have been cor-

UTICA,
August, 1829.

rect. The contract was for five hundred bales; it was entire; there was no obligation on the part of the plaintiffs to receive a less quantity than the whole, and consequently none on the part of the defendants to deliver less than the whole.

The obligation to deliver and to receive must be reciprocal. This construction of the contract was resisted on the argument, upon the ground that it imputed great folly to the plaintiffs in becoming bound to receive the cotton, however low it might be depressed in price; while the defendants could avail themselves of the advantage of its improved value, by preventing its arrival within the stipulated time. There is no proof nor pretence that any act was done by the defendants to retard the arrival of the cotton. If nothing was done to control the contingent event upon which the delivery was to be made, the benefit or loss likely to result from its happening was mutual; and if any thing was done to control it, the party injured thereby would have a remedy.

I see no cause for interfering with the decision of the judge at the circuit.

Motion to set aside nonsuit denied.