# NEW YORK SUPERIOR COURT.

THEODORE REIMERS and others agt. JOHN P. RIDNER and others.

A contract in writing was made as follows: "New York, September 25, 1855. Sold to Messrs. Reimers & Schmidt, seven hundred and thirty-three bags crude saltpetre, at fifteen cents per pound, cash, in bond, to arrive on board the ship Arabella from Calcutta, bound to Boston. No guaranty made as to quality or time of arrival of said ship, to be taken when landed along side of the ship in Boston. (Signed), Babcock & Cox, Brokers."

*Held,* that this is a mere *executory contract,* conditional on the 'arrival of the goods, and not a *transfer of title.*

*Held,* also, that the *purchasers* under this contract were not bound to accept a *less number* of bags of saltpetre than the contract specified.

*General Term, February,* 1864.

*Before* ROBERTSON, *C. J.,* MONCRIEF and MONELL, *J. J.*

THIS action coming on to be tried before a justice of this court and a jury, the defendants, upon the case being opened, moved to dismiss the complaint. The court overruled the motion, and to its decision in that behalf the counsel for the defendants then and there duly excepted.

After introducing some testimony, the defendants again moved to dismiss the complaint, which motion was denied by the court, and defendants' counsel duly excepted.

The defendants' counsel thereupon requested the court to instruct the jury to find a verdict for the defendants. The court declined so to do, and the defendants' counsel duly excepted.

Thereupon the court directed the jury to find a verdict for the plaintiff for $4,296.95, and directed "the exceptions taken at the trial to be heard in the first instance at the general term, and judgment in the meantime to be suspended." To this direction the counsel for the defendants duly excepted.

The complaint alleges that the defendants on or about the 25th day of September, 1855, at the city of New

York, entered into a contract in writing with the plaintiffs, whereby the defendants bargained for and bought of the said plaintiffs, and the said plaintiffs, at the instance and request of the said defendants, then and there "sold to the defendants 733 bags of crude saltpetre at fifteen cents a pound, cash, in bond; that the same was to arrive on board the ship Arabella from Calcutta, bound to Boston; no guaranty as to quality or time of arrival of said ship, and the same to be taken when landed from along side the ship in Boston;" that the said ship, with the saltpetre on board, arrived at Boston on or about the 3d day of December, 1855. * * * * That immediately after the said arrival of the said ship, as aforesaid, to wit, on or about the 11th day of December, 1855, the plaintiffs offered and tendered said saltpetre to said defendants, &c. * * * That the said defendants, at the time aforesaid, when so requested, and at all times thereafter, have neglected and refused to receive said saltpetre or any portion thereof, or to pay for the same, and then and there, and at all times thereafter, have wholly neglected and refused to comply with their undertaking or contract.

The complaint further shows that on or about the 24th day of December, 1855, upon inspection of the said saltpetre, three hundred bags were found to be unsound and unmerchantable, and that thereupon the plaintiffs waived their right to accept the whole amount or number of bags of saltpetre, but tendered and offered to deliver to the defendants the remainder thereof—to wit, three hundred and ninety-three bags thereof—being sound and merchantable * * * and the plaintiffs were then ready, and able and willing so to deliver the said saltpetre; that the defendants at the time aforesaid, and at all other times, have neglected and refused to receive said saltpetre, or any portion thereof, or to pay for the same, and have wholly neglected and refused to comply with their said undertaking or contract.

The answer of the defendants denies that they bargained for and bought of the plaintiffs, and that the plaintiffs sold to them seven hundred and thirty-three bags of crude saltpetre or any part thereof, but the defendants aver that on or about the 25th day of September, 1855, they (the defendants) entered into a contract with the plaintiffs, of which the following is a copy :

"NEW YORK, *September 25th*, 1855.
"Sold to Messrs. Reimers & Schmidt, seven hundred and thirty-three bags crude saltpetre, at fifteen cents per pound, cash, in bond, to arrive on board the ship Arabella, from Calcutta, bound to Boston. No guaranty made as to quality or time of arrival of said ship, to be taken when landed along side of the ship in Boston.
"(Signed,)
"BABCOCK & Cox, *Brokers.*"

* * * The defendants deny that they ever became the owners of any part of said saltpetre ; * * * they aver that the plaintiffs never were the owners, or possessed of other than three hundred and ninety-three bags of saltpetre on board of said ship Arabella, * * * and they deny neglect or refusal to comply with their undertaking or contract.

It seems that an invoice of 1,467 bags of saltpetre was shipped on board the ship Arabella; that this shipment belonged to W. S. Bullard, and was the only saltpetre on board of that vessel; that on the 11th of August, 1855, for account of the said W. S. Bullard, Esq., a broker in Boston " sold to the Hazard Powder Company one-half of an invoice of saltpetre, to arrive per ship Arabella, from Calcutta, say about 733 bags, more or less, invoice 1468 bags,) at eight cents per pound, six months' credit from delivery on the wharf. No guaranty as to quality or time of arrival."

It further appears that on the 12th September, 1855, a

contract, of which the following is a copy, was duly made by a broker, and confirmed by said Bullard:

"BOSTON, *September* 12*th*, 1855.

"Sold on account W. S. Bullard, Esq., one-half of 1464 bags of saltpetre, on board of the ship Arabella, to arrive, at ten and one-half cents per pound, cash, in bond, (it being understood that the purchaser is to have one-half of each number in the invoice,) to Messrs. Reimers & Schmidt, of New York.            (Signed,)

"F. H. JACKSON, *Broker.*

"Confirmed, W. S. BULLARD."

It was admitted that 340 bags of saltpetre to arrive in the Arabella, referred to in the complaint, were nearly, or quite, lost or destroyed, and were sold upon their arrival on account of the underwriters (part of the same being entirely dissolved by sea water;) that the same were abandoned by the original importer (W. S. Bullard, Esq.)

The Arabella arrived on the 7th December, commenced discharging the saltpetre about the 15th, and finished on the 24th; the one-half of the invoice sold to the plaintiffs was sold to arrive in bond; it was entered in Mr. Bullard's name; it must be entered by the importer; Mr. Bullard held the bills of lading for this saltpetre; he had not assigned the bill of lading, or any part thereof, to Reimers & Schmidt (plaintiffs;) a certificate of transfer issued by the custom house authorities constitutes a delivery of goods in bond from the importer to the purchaser; Mr. Bullard did obtain such a certificate of transfer of these 393 bags sold to the plaintiffs; he obtained this certificate on the 7th January, 1856; it was mailed the same day to the plaintiffs; the plaintiffs or their assigns could not have obtained the 393 bags of saltpetre without the certificate of transfer. The plaintiffs paid for the saltpetre between the 22d December, 1855, and the 2d of January, 1856. The plaintiffs could not deliver the saltpetre, they

purchased from Mr. Bullard, until the 7th January, 1856. The plaintiffs on the 12th January, 1856, made a formal tender, through their attorney at law, to the defendants and they replied, "we cannot accept it (393 bags of salt-petre,) as the contract calls for different things," or words to that effect.

R. W. VAN PELT, *for plaintiffs.*
JAMES ESCHWEGE, *for defendants.*

By the court, MONCRIEF, J. This action is brought upon a written contract of sale of saltpetre, in plain terms en-titling the defendants to receive from the plaintiffs, when landed in Boston along side of the ship Arabella, 733 bags crude saltpetre, to arrive on board the said ship; and there is an ample illustration in the bill of exceptions in this case of the peculiarities of mercantile contracts, and the necessity of giving construction to each according to the intent of the contracting parties manifest from their respective contracts. By the sale note from Bullard to the Hazard Powder Company, following the decision in *35th Barbour Rep.* 515, 521 (*Havemeyer* agt. *Cunningham*), the latter was entitled as a purchaser of an invoice of goods then on board the ship Arabella, whatever portion of the quantity sold arrived in a sound condition, and they re-ceived their one-half part of the invoice so purchased. The plaintiffs' contract calls for "the one-half of 1,464 bags saltpetre ;" and hence, in my view, differs most essen-tially from the agreement to deliver " one half of an in-voice of saltpetre to arrive per ship Arabella, say about 733 bags, more or less." * * The one can legally claim 732 bags of saltpetre from on board the vessel Arabella, and the other having bought the moiety of whatever is on board and may arrive at the port of destination, of course is entitled to demand what may arrive. The distinction between the sale to the Hazard Powder Company, and the

cases cited from 35th Barbour Rep. (supra), is, that in the
one there was no guaranty as to quality, and in the other
" the sugar was to be of current quality, clayed;" this,
however, is immaterial in the present discussion, inasmuch
as, in both these instances, the contract of sale must be
held to be absolute in the sense that the party was en-
titled to the thing he had agreed to buy, being then on
board of the vessel. With reference to the contract made
with the plaintiffs, it may be questionable whether they
were bound to receive under it any greater number of
bags than 732 bags, being the one-half of 1,464 bags of
saltpetre, on board of the ship Arabella, on the 12th Sep-
tember, 1855. If on that day, on board of that ship,
there was in existence only 786 bags of saltpetre, it can
need no argument to state, as a legal verity, that Mr. Bul-
lard could not, by virtue of the contract, require the
plaintiffs to accept 393 bags, being one-half of the salt-
petre actually arriving at Boston and delivered from on
board the ship Arabella, unless their contract is construed
to import a sale of one-half the invoiced saltpetre then on
board the ship Arabella.

It is an elementary principle of law, that, if the right
of property has not passed by the bargain, the purchaser
cannot be made responsible for the price, unless the ven-
dor can show that the article or chattel tendered for ac-
ceptance fairly corresponded in quantity  *  *  with the
thing bargained for and agreed to be bought; for no man
can be compelled to take more than he agreed to buy.
*  * (Addison on Contracts, 238, p. 237, top paging, 2d
American edition.)

It will not be pretended that, in either Havemeyer agt.
Cunningham (supra), or by virtue of the contract of
Bullard with the Hazard Powder Company, the importer
or vendor was divested of his property, or that the title
to the goods passed to the vendee; the weight of the arti-
cles remained to be ascertained. (Add. on Cont. 224 and

5, *and cases cited* ; *Parsons' Mercantile Law, pp.* 48–9.) The evidence fully establishes the fact in the present case that the title to the goods remained in Mr. Bullard until the 7th of January, 1856. He could have assigned and transferred the title to the saltpetre on board the ship Arabella by the indorsement and delivery of the bills of lading which he then had, and which he continued to hold until after the arrival of the ship in Boston.

In confirmation of this view, Mr. Bullard abandons the property to the underwriters, and receives value therefor from them, which property otherwise was owned by the plaintiffs or by the defendants.

Again, the transaction between the parties on the 25th of September, 1855, cannot be treated as an absolute sale of seven hundred and thirty-three bags of saltpetre at that time. It does not appear that such a quantity which could be claimed by the plaintiffs under their contract with Bullard was in existence on board the ship Arabella on that day. Only three hundred and ninety-three bags arrived at Boston, over which the plaintiffs exercised acts of ownership or control, or became entitled to the possession.

The contract of the plaintiffs with the defendants called for the delivery of 733 bags of saltpetre from on board the ship Arabella, to be taken when landed along side the ship in Boston; the plaintiffs could not be required to transfer any greater, and the defendants as plainly cannot be compelled to accept any less number of bags of saltpetre than they had agreed to purchase and the plaintiffs contracted to deliver.

The tender of a number less than 733 bags of saltpetre did not satisfy the requirement of the contract on the part of the plaintiffs, and the defendants were not bound to accept (*Shields et al.* agt. *Pettie et al.* 4 *Coms. Rep.* 122 ; *S. C.* 2 *Sandf. S. C. R. p.* 262) is in striking analogy with the

agreement between these parties, and is decisive of the question involved.

I am of opinion that the learned judge erred in not directing a verdict for the defendants, and, in my opinion, the refusal to dismiss the complaint upon the plaintiffs resting their case was also erroneous. A verdict of the jury for the plaintiffs upon the evidence then introduced cannot be sustained.

In this view the other exceptions need not be, and are not, noticed.

The exceptions should be sustained, and a new trial directed, with costs to abide the event.

ROBERTSON, J. The sale in this case was of goods to arrive, it was therefore a mere executory contract, conditional on their arrival (*Shields* agt. *Pettie*, 4ᵇ *N. Y. Rep.* 122; *S. C.* 2 *Sandf. R.* 262; *Benedict* agt. *Field*, 16 *N. Y. Rep.* 595; *S. C.* 4 *Duer Rep.* 154) and not a transfer of title. The only question is, whether the contract was for the delivery of so much of the amount sold as should arrive, and therefore apportionable, or only of the specified amount. In *Havemeyer* agt. *Cunningham* (35 *Barb. Rep.* 515) the contract was of an invoice of goods of a certain number of tons "more or less," and for that reason only it was held that the seller was only bound to deliver what arrived, and was not responsible for any loss on the voyage.

In the present case the contract was for a definite number of bags of saltpetre, although not for a specified quantity. There does not seem to be any good reason why a purchaser of goods at sea, of whose quantity he cannot be presumed to be aware, should be compelled to accept part of the quantity bought by him, any more than if they were in a distant warehouse. The fact that such goods have not arrived merely postpones the execution of the

contract, and without some qualification in its terms ought not to affect the rights of either party.

In the case last cited, the principal question was, whether the terms " to arrive on or before " a certain day, used in it, made the sale absolute or conditional on the arrival on or before that day, and it was held to be absolute on arrival, whenever it happened, merely postponing the time of delivery, distinguishing it from *Russell* agt. *Nicoll* (3 *Wend. Rep.* 112,) only by the insertion of the name of the vessel. The obligation of the seller only to deliver what arrived in such case sustains a correlative obligation on the part of the buyer to accept it. But, unless the former obligation had been limited by the use of the words "more or less " and " invoice," the purchaser, by whom the action was brought, could not have been enabled to recover for non-delivery of the cargo actually arrived, if less than the amount specified, as embracing the whole of the contract. All the reasons which, in the case of any other contract, entitle the party seeking to enforce it to reject a partial and require a full performance, equally apply to such a one as this; less than the full amount contracted for may baffle all the purposes of a buyer. His right to insist on a complete performance is established by numerous authorities.

Besides, there was on board, on the arrival of the vessel, the full number of bags of saltpetre required to be delivered by the contract, although nearly one-half had been lessened in bulk by the dissolving of part of the contents by water.

These were transferred to underwriters by the plaintiffs, or those under whom they claim, by abandonment. There was no guaranty of quality in the contract, and the price was to be regulated by weight. I see no reason why the defendants were not entitled to whatever remained of the saltpetre in the bags which were abandoned. It was held in *Havemeyer* agt. *Cunningham* (*ubi supra*), that the pur-

chasers were entitled to recover for the part of the cargo alleged to have been injured. They were, at least, en- titled to an election. Possibly if such goods were unmer- chantable, as charged in the complaint, as the defendants would not be bound to accept them, the plaintiffs were not bound to tender them; but the evidence did not sustain this view.

With regard to the mode of delivery, I therefore concur in the opinion that the defendants are entitled to a new trial, with costs to abide the event.