## MATTHEWS *vs.* HOBBY.

On the 4th of November, 1864, the plaintiff, by a written contract called a sale note, sold to D. one hundred bales of cotton, quality even middling, at fifty-nine cents, "to arrive," for cash on delivery. On the 18th of December twenty-one bales of the cotton arrived, of which notice was given to S., the purchaser's agent, who selected nine of them as even middling, obtained possession of them, and sent them to the warehouse of the defendant, with directions to store the same, as the property of the Atlantic Delaine Company. Payment was claimed by the plaintiff to have been demanded, at the time the cotton was delivered to S. and refused. It was not pretended that the Atlantic Delaine Company paid, or parted with, any consideration for the cotton. But it appeared that the same was deposited with the defendant for the benefit of the company, in part fulfillment of a contract which D. had · entered into with them, to deliver to them 200 bales of cotton on arrival.

*Held* 1. That although the Atlantic Delaine Company received the nine bales in question under their contract with D. and credited him therewith, yet as they had paid nothing for the cotton, they could not be protected as *bona fide* purchasers, against the plaintiff's lien, unless the plaintiff was originally not entitled to, or waived payment on delivery.

2. That either vendor or vendee could have regarded the contract between them as an entire contract. The cotton was "to arrive;" and until the whole of it should arrive, the one was not obliged to deliver, or the other to receive, any portion of it.

3. But that as D. the purchaser, did receive the nine bales, he was bound to pay for them, on delivery, unless the vendor waived this condition of the contract.

4. That a waiver could be effected either by express assent, or by acts, such as an unreasonable delay in demanding payment, or in not demanding it at all.

5. That the testimony upon the question of an express waiver being conflicting, it should have been left to the jury; and that the judge erred in taking it from them, and in refusing to admit evidence bearing upon that question.

The cases of *Champlin* v. *Rowley*, (18 *Wend.* 187,) and *Paige* v. *Ott*, (5 *Denio*, 406,) commented on, and held not to contradict the principles of this decision.

THIS was an action to recover the possession of nine bales of cotton of which the plaintiff claimed to be the owner. The defendant, in his answer, denied any wrongful detention of the property, and alleged that he was a warehouseman, and the cotton was delivered to him by the Atlantic Delaine Company, of Providence, Rhode Island, to be kept by him on storage, for them ; that the cotton belonged to that com-

pany, and the same having been replevied, he demanded judgment for the possession, and for the return and recovery of the cotton, with damages for the detention thereof. On the trial the plaintiff proved that on the 4th of November, 1864, he, through a broker, sold to one G. R. Drowne, one hundred bales of cotton, guaranteed to be even middling, at 59 cents "to arrive," for cash on delivery. A sale note to that effect was signed by the broker. On the 18th of December, 1864, twenty-one bales of the cotton arrived, of which notice was immediately given to one Skinner, the agent of Drowne. Skinner selected nine of these bales as even middling, obtained possession of them, without payment, and sent them to the warehouse of the defendant, to be stored, as the property of the Atlantic Delaine Company, and the plaintiff replevied them, in this action. The judge directed the jury to find a verdict for the plaintiff, and to find the value of the cotton, which they did ; assessing the value of the cotton at $2,700. The other material facts are sufficiently stated in the opinion of the court.

The defendant appealed.

*Man & Parsons*, for the appellant.

*Edwards Pierrepont*, for the respondent.

*By the Court*, CLERKE, J. The contract was for a sale by the plaintiff to Drowne of one hundred bales of cotton, quality even middling, at 59 cents, to arrive ; cash on delivery. Twenty-one bales of the cotton had arrived ; of which notice was immediately sent to Skinner, Drowne's agent, who selected nine of them, as even middling, in accordance with the contract, and obtained possession of them. According to the testimony of the plaintiff, immediate payment was demanded of the agent, on behalf of the plaintiff ; which was refused. Skinner sent the cotton to the warehouse of the defendant, and told him to store it, as the property of the

Matthews *v.* Hobby.

Atlantic Delaine Company, of Providence, R. I. This deposit of the goods with the defendant for the benefit of this company was alleged to have been made in part fulfillment of a contract which Drowne had entered into with them, some time previously, to deliver to them two hundred bales of cotton, at 64 cents, cash on arrival.

I. If the Atlantic Delaine Company can be regarded under that contract as *bona fide* purchasers of the nine bales in question, whether the plaintiff did or did not waive his right to payment on delivery to Drowne, he cannot maintain this action. It is not pretended that the company paid or parted with any consideration for them. The defendant's counsel, indeed, offered to show that Chapin, the treasurer of the company, had received the returns (in an account) of the nine bales, in the hand writing of Skinner; that he had given Drowne credit for the same in the books of the company, under the contract; and that in consequence of the non-performance by Drowne of his contract, the company had charged Drowne with the profit to them on that contract, against the amount due for the nine bales. This offer the judge overruled at the trial, on the ground that the proposed proof would not be sufficient to show that the company was a *bona fide* purchaser.

In *Palmer* v. *Hand*, (13 *John.* 433,) the rule which was then, and had been for a long time previously, most prevalent, was distinctly stated, and that is, "when goods are sold to be paid for on delivery, and during the delivery and before it is completed, the purchaser sells or pledges them to a third person for a valuable consideration, but without notice to the original vendor, the lien of the latter will not be affected, and he may recover them from such subsequent purchaser." In that case actual advances in cash were made to the vendee, by the defendant, to nearly the amount of the value of the goods, and while they were in course of delivery. The defendant was regarded as an innocent party who had in good faith advanced his money; yet the court did not pro-

tect his claim against that of the original vendor. See also
*Sargent* v. *Gill*, (8 *N. H. Rep.* 325 ;) *Copland* v. *Bosanquet*,
(4 *Wash. C. C. Rep.* 594 ;) *Coggill* v. *Harlem and New
Haven R. R. Co.*, (3 *Gray*, 545 ;) among the number. In
*Smith* v. *Lynes*, (1 *Seld.* 41,) the Court of Appeals seems to
negative this rule. It declares, in that case, that even where
the delivery of goods to the vendee was conditional, yet if he
sold them to third parties ignorant of the condition, the lat-
ter were entitled to the protection of *bona fide* purchasers,
so far as they had paid for them. Lynes, the defendant
in that case, had made an agreement with Thompson &
Company before his agreement with the plaintiff, by which
they agreed to take from him the goods which he after-
wards purchased from the plaintiff. Some parcels of the
goods delivered by Lynes to Thompson & Co., had been paid
for by them to Lynes ; other parcels received by them had
not been paid for. But as these latter parcels had been de-
livered by Smith, the plaintiff unconditionally to Lynes, it is
stated in the opinion of the court that the title of Thompson
& Co. to them was perfect ; although they had not paid for
them ; leaving us, necessarily, to infer that if the delivery to
Lynes had been conditional, their title would not have been
perfect against the plaintiff, in consequence of the fact that
nothing had passed from them to Lynes. There was an
agreement, as in the case before us, between Thompson & Co.
and Lynes to take from him the goods which he afterwards
purchased from the plaintiff, and the goods were received by
them and credited to Lynes. Nevertheless, the court held
that if any portion of those not paid for had been delivered
by the plaintiff to Lynes, conditionally, they could not be
protected against the original vendor's lien. This decides
the question under consideration in the case before us. The
Atlantic Delaine Company paid nothing for the nine bales
of cotton ; and although they received them under their con-
tract with Drowne, and credited him with the receipt of
them, they cannot be protected against the plaintiff's lien

unless the plaintiff was not originally entitled to, or waived payment on delivery of the nine bales to Drowne's agent.

II. Either Mathews or Drowne could have regarded the contract between them as an entire contract. The cotton was "to arrive;" and until the whole of it should arrive, the one was not obliged to deliver, or the other to receive, any portion of it. *Russell* v. *Nicoll*, (3 *Wend.* 112,) is in many respects similar to the case before us. The contract was for the sale of 500 bales of cotton, to be delivered on its arrival in New York from New Orleans, to be paid for in cash on delivery, and to be delivered at any time between February and 1st of June, 1825. Eleven bales arrived before the 1st of June, which were demanded by the vendees, (the plaintiffs in the action,) and an offer of payment was made to the defendants, who refused to deliver any portion until the whole should arrive. Marcy, J., in delivering the opinion of the court, says : "The contract was for 500 bales ; it was entire ; there was no obligation upon the part of the plaintiffs to receive a less quantity than the whole ; and, consequently, none on the part of the defendants to deliver less than the whole." So, in the case before us, the plaintiff was under no obligation, according to the contract, to deliver ; nor was Drowne under any obligation to receive the nine bales, until the whole should arrive. But, as he did receive them, he was bound to pay for them on delivery, unless the plaintiff waived this condition of the contract. This, no doubt, the latter could have done, either by express assent, or by acts, such as an unreasonable delay in demanding payment, or in not demanding it at all.

III. Was payment on delivery of the nine bales waived by the plaintiff ? The plaintiff's agent testifies that so far from waiving payment, he insisted upon it, as soon as he discovered that the defendant's agent got possession of the cotton. Comstock swears that "it was agreed between him and Skinner, Drowne's agent, that the cotton was to be paid for immediately upon the delivery of the weigher's bill and

the receipt, and that the plaintiff was to hold the title and custody of the cotton until the money was paid." And he repeats this, in substance. If there was no testimony to contradict these clear and positive statements of Comstock and of the other witnesses of the plaintiff, the judge would have been correct in taking the consideration of the question from the jury. But Wenman, one of the defendant's witnesses, denies these statements. Skinner, Drowne's agent in the transaction, expressly contradicts Comstock, and testifies that nothing was said between them to the effect that the cotton should be paid for day by day as it was delivered. He states enough to show that Comstock waived immediate payment for the nine bales; provided that he (Skinner) would pay Sawyer, Wallace & Co. for cotton previously purchased by Drowne from them through Matthews. And see the agreement proved by Skinner, fol. 127. All this conflicting testimony should have been left to the jury. The defendant's counsel, besides, offered, several times, to show what was the condition or stipulation, with reference to the delivery of the nine bales, which was objected to; and the objection was sustained. I think this was error. The defendant's counsel, in making this offer, proposed to furnish express testimony in relation to the precise question before the jury—whether the plaintiff waived the condition of payment on delivery.

With respect to the question of the right of payment on the delivery of less than the whole contracted for, *Champlin* v. *Rowley*, (18 *Wend.* 187,) and *Paige* v. *Ott*, (5 *Denio*, 406,) referred to by the counsel of the defendant, do not contradict the principle which I have deduced from *Russell* v. *Nicoll*, (3 *Wend.* 112.) In the contracts stated in those cases, it was expressly provided that payment should not be required, until the whole of the thing contracted for should be delivered; except that in *Champlin* v. *Rowley* $100 should be paid in advance; which had been done; and about which there was no dispute. Where there is no such provision, as in the contract before us, I repeat, therefore, that

The People *v.* Fredericks.

the vendor is not obligated to deliver, nor the vendee to receive, the goods, until the whole shall arrive; but if less than the whole be received by the vendee, and the contract stipulates for payment on delivery, the vendor is entitled to immediate payment for the portion delivered. Of course this right can be waived; and, as there was conflicting evidence on the question, in this case, the judge erred in taking it from the jury, and in refusing to admit evidence bearing upon that question.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

NEW YORK GENERAL TERM, November 5, 1866. *Clerke, Mullin* and *Ingraham,* Justices.]

———————•◦•———————

THE PEOPLE, *ex rel.* The Buffalo and State Line Railroad Company, *vs.* PETER FREDERICKS, *et al.* assessors, and Geo. M. Pierce, supervisor of the town of Hamburgh.

48b 173
41ap546

48b 173
55ad546
55ad547

48b 173
172 NY² 40

When the assessors, in their return to a writ of certiorari, state that they had perfected the assessment roll and delivered the same, duly certified, to the supervisor of the town, and that the same was not in their possession or control at the time the writ was served on them, the court will dismiss the writ, as to them.

The only questions the court can consider upon certiorari brought to review an assessment under the general tax law, are whether the assessors had jurisdiction to assess the relator, and have kept their proceedings within the bounds of such jurisdiction.

Assessors are not bound to reduce the value of the property of any party deeming himself aggrieved by their assessment to the amount fixed in his sworn statement and examination before them, but they are to fix the value after such statement is before them, as they may deem just, having in view the general duty to assess property "at its full and true value, as they would appraise the same in payment of a just debt due from a solvent debtor."

The real estate of railroad companies should be assessed at its value for the purpose to which it has been adapted, and not as mere farming lands; and in estimating the same, the assessors are not bound to consider it as mere land and superstructure isolated in their town from the other parts of the road. They are entitled to estimate the value of that part of the real estate