LASA E. KEELER *v.* DAVID VANDERVERE.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

The defendant agreed to take the plaintiff's crop of hops, then present, dried, and gathered in heaps, and made part payment of the price asked, but the plaintiff was to bale and deliver at a time and place named, and did then and there tender the hops in bales, when it appeared that heated and moulded hops, part of the lot in question, had been negligently pressed by the defendant in some of the bales, rendering the good hops almost worthless.—*Held,* that the defendant was at liberty to refuse to receive the hops, or any of them.

*Held* further, that the title to the hops remained in the plaintiff at the time of the tender.

THE action was brought in the Supreme Court to recover damages for a refusal to accept and pay for a quantity of hops. The action was tried at the Broome county circuit in January, 1871, before one of the justices of this court and a jury.

It appeared upon the trial that the defendant, in October, 1868, purchased the crop of hops raised by the plaintiff that year, being about 3,600 pounds, at the price of eighteen cents per pound, to be paid on delivery. The hops at the time had been dried and were in the plaintiff's hop house in Union, Broome county; the defendant saw them and examined some of them from the outside, which were of good quality. They formed a mass so bulky that it was difficult to examine the whole of them. The plaintiff was to press and bale them, and deliver them at Union or Binghamton when notified to do so.

The plaintiff commenced pressing and baling the hops on the day of the sale and finished the next day. In doing so, he found that a portion of the hops had been heated and rendered worthless; the quantity thus injured were, as described by the plaintiff, as large as a bushel basket, and by Mr. Birch, who assisted in the work, as being four or five feet long, four feet wide and two and one-half feet deep. Neither

plaintiff or Birch had had any experience in handling hops or knew what should be done with the heated ones.

The plaintiff mixed them with sound hops and then pressed and baled the good and bad thus mixed together. The tainted hops were thus carried into a number of bales; the plaintiff says two or three bales, Birch says four or five bales.

About the 15th of January, 1869, the defendant was at Union to receive the hops, and upon their being presented to him he examined some of them and found that they had been heated and were musty and unmerchantable, and he declined receiving them for that reason.

The undisputed evidence in the case showed that proper care and skill require that the hop grower, when he comes to press and bale his hops, should reject and throw away any heated hops which he may find in the pile. That mixing heated hops with pure and untainted ones, and then pressing and baling, makes the whole mass musty, unmerchantable, and nearly if not wholly worthless, and that they had been rendered so by the plaintiff's carelessness or want of skill in operating upon them after the agreement with the defendant.

The defendant moved, when the plaintiff rested, for a nonsuit on the ground that the hops when delivered were not merchantable. The motion was denied and the defendant excepted.

He renewed the motion at the close of the evidence, on the ground above mentioned, and also on the further ground that the plaintiff, in pressing and baling the hops, was to do it skillfully, and in such a manner that no injury was to come to them from his treatment of them, and that the evidence showed that the plaintiff had failed in his duty in this respect. The motion was denied and the defendant excepted. The defendant also excepted to portions of the charge which it is not necessary to state. The jury found a verdict for the plaintiff for $285.

A bill of exceptions was made and settled, and the court directed that the exceptions be heard in the first instance at General Term, with a stay of proceedings.

*L. Seymour*, for the defendant.

*F. B. Smith*, for the plaintiff.

Present — MILLER, P. J., JAMES and PARKER, JJ.

By the Court — MILLER, P. J.   It is a general rule of law, that, where anything remains to be done, by the vendor of personal property, to ascertain the quantity or quality of an article sold, or to put it in the condition which the terms of the contract require, the title does not pass, and the contract is executory.   (*Terry* v. *Wheeler*, 25 N. Y., 520, 525 ; *Burt* v. *Dutcher*, 34 id., 493 ; *Kelley* v. *Upton*, 5 Duer, 336 ; *Fleeman* v. *McKean*, 25 Barb., 474 ; *Whitcomb* v. *Hungerford*, 42 id., 177 ; *Pierson* v. *Hoag*, 47 id., 243 ; *Joyce* v. *Adams*, 4 Seld., 291.)   And, where such is the case, and the article is not defined at the time, or is to be afterward procured or manufactured, the contract carries with it an implied obligation that the article shall be merchantable, at least of medium quality or goodness.   But if the article is in existence at the sale, and if the purchaser has an opportunity to examine the property, and it is set apart and selected, this rule does not apply.   (*Hargous* v. *Stone*, 1 Seld., 73–86.)   The cases cited and relied upon do not go beyond this, or establish any different rule ; and, in all of them, either the property was not examined and inspected before a delivery, or there was a special contract as to its condition.   The case at bar differs from those which are relied upon, as the defendant saw and examined the hops before the purchase was made.   (*Sprague* v. *Blake*, 20 Wend., 64 ; *Howard* v. *Hoey*, 23 id., 350 ; *Reed* v. *Randall*, 29 N. Y., 358 ; *Hamilton* v. *Ganyard*, 34 Barb., 204 ; on appeal, 3 Keyes, 45.)

If the views expressed are sound and correct, there was no error in the refusal of the court to nonsuit, upon the ground that the evidence showed that a considerable portion of the hops were not in a fair or merchantable condition when delivered.

It is argued by the defendant's counsel, that the court erred in refusing to nonsuit the plaintiff, upon the ground that the evidence showed that a large portion of the hops were rendered worthless and useless by the manner in which they were baled by the plaintiff, and that his own act had destroyed them and rendered them useless and of no value.

I think that the judge upon the trial was clearly wrong in refusing the motion made for a nonsuit upon the ground last stated. The testimony is undisputed that the hops, with the exception of a small quantity which, after the sale, were found to be spoiled, were in a sound condition when the bargain was made; and at this time neither party was aware that any of them were injured or in a damaged condition. It was first discovered that such was the case when they were pressed and baled. The plaintiff had never pressed hops before, and did not know, as he testifies, what effect it would have upon the bale to put a small portion of heated hops with the others. According to the plaintiff's version of the matter, one Birch, who was assisting the plaintiff in baling the hops, first discovered a bunch of heated hops among the good ones, and informed the plaintiff of it. The plaintiff and others present looked at them. The plaintiff said, "What do you think?" and to Birch particularly he said, "If they will injure the hops I will not put them in; and if they are not going to injure them, so anybody would ever know the difference, I will put them in." Birch replied that he did not think there were enough to do any damage, or so that anybody would know any difference; and they put them in. Upon his cross-examination the plaintiff testifies that he took and scattered the heated hops through the several bales, and mixed them with the others, because he thought that there were not enough injured hops to do any damage. Birch swears that he had not much experience in baling hops; that plaintiff called him up stairs, instead of his calling plaintiff, and he told plaintiff that he thought they were heated; that the plaintiff asked if they could not be so mixed that they would not show, and Birch

replied that he did not know but they might, and the plaintiff said he would try it, and did so.

The testimony of the plaintiff shows that tainted hops were in two of the bales when delivered. Another witness, Birch, testifies to four or five bales, and it appears, finally, after the hops had remained in store some time, all of them were damaged and of but little if any value.

The evidence is undisputed, that mixing heated hops with good hops, while pressing and baling, is an improper and unskillful way of preparing them for market, destroys their flavor and renders them musty and unfit for use. There is no testimony in the case which shows that the damages could have been occasioned by any other cause. And even if the injured hops may not have entered into or tainted more than the few bales which were examined at the time of delivery, this was enough to infect and render nugatory the whole contract. The contract was entire for all the hops, and the defendant was not bound to receive any less than the whole crop. He had a right to insist upon a delivery of all he had purchased according to the terms of the agreement. (*McKnight* v. *Dunlop*, 4 Barb., 44; *Matthews* v. *Hobby*, 48 Barb., 167; *Reimers* v. *Ridner*, 2 Rob., 11.) The plaintiff was bound to exercise ordinary care and skill in pressing and baling the hops, and is liable for a failure to do so. He was clearly guilty of negligence in thus mixing the heated hops with the others. If he had no previous experience he should have consulted with those who had ; and, in a matter which might affect the soundness and value of the entire crop of hops sold, if he had not sufficient knowledge and skill, is inexcusable for not employing or advising with those who were competent to judge. None such seem to have been engaged with him in pressing and baling the hops, and there is perhaps some reason to believe that the plaintiff may have been too anxious to realize all he could out of the hops, without paying that attention to their preparation for delivery, and without that regard to their quality and condition, which his obligation as vendor demanded. It

would be unjust and in violation of a settled principle of law, to allow the plaintiff to recover under the circumstances presented, and for the reasons stated the judge should have granted the motion made for a nonsuit.

There is no other question in the case which requires discussion, and the motion for a new trial must be granted, with costs to abide the event.

PARKER, J.    I prefer to state the ground on which I think a new trial should be granted, as follows:

The contract to purchase the hops was executory, because something remained to be done to prepare them for delivery, and then to ascertain the quantity, and because they were to be paid for on delivery. The title, therefore, remained in plaintiff. (*Pierson* v. *Hoag*, 47 Barb., 243.) It is undis-puted that when they were offered for delivery a portion of them had deteriorated by the fault of the plaintiff, and were, through such fault, not in a merchantable condition.    In this condition they were not what defendant purchased, and he was not bound to receive them, and as the contract was entire he was not bound to take part without the whole.    As in regard to this fact there was no dispute, the plaintiff should have been nonsuited.    A new trial should therefore be granted, with costs to abide the event.

JAMES, J., concurred with PARKER, J.

New trial granted.