*56
 
 Gray, J.
 

 The seventh section of the company’s charter, which, it is insisted, gives to the respondents a remedy at law and which is urged as a ground for dismissing the bill in this cause, provides that “ the grantee or alienee having a policy assigned to him may have the same ratified and confirmed to him for his own proper use and benefit upon application to the directors,” and if ratified and confirmed the assignee or alienee “ shall be entitled to all the rights and privileges and. be subject to all the liabilities to which the original party, to whom the policy issued, was entitled and subjected under this act.”
 

 This section, which is incorporated in many if not all our mutual insurance company' charters, it has been held, ip the cases of
 
 Mann
 
 v.
 
 The Herkimer Co. Mu. Ins. Co.
 
 (4
 
 Hill,
 
 187,) and
 
 Ferris
 
 v.
 
 North Amer. Fire Ins. Co.
 
 (1
 
 id.
 
 71,) authorizes the prosecution of an action on the policy assigned, in the name of the assignee, and is so far an alteration of the rule of the common law, which admitted the prosecution in such a case in the name of the insured only, and like every other enactment which varies the common law, must be construed strictly. By applying this rule, no action
 
 at law
 
 for the recovery of their loss can be sustained in the name of the respondents in this case against the appellants. It is entirely clear from the facts admitted by the pleadings, that in this case there was not an assignment of the policy at all. There was an assignment only, by one of the respondents to the other, of part of the property insured and an agreement by the company that the policy which had been previously issued to one, and covering the property which by the assignment became the joint property of the two, might stand and enure to the benefit of both. This was the arrangement between the respondents and the company. There was no assignment of the policy or of any part of the policy by Jonathan Bodle, to whom it was issued, to James B. Bodle, who subsequently became a joint owner with him in the property. The ratification of the sale of part of the property by Jonathan to. James B. Bodle, and the agreement and assent of the company entered upon their books that the policy should remain valid and stand as a security for both, did not certainly operate as an assignment of the policy
 
 *57
 
 or a transfer of such an interest therein from one to the othei as is contemplated by the seventh section of the company’s charter, and as would authorize the prosecution of an action at law in the name of the assignee. I regard the transaction between the Bodies and the company, that is, the assent of the company to the transfer of the property and their agreement that the policy issued to one should remain good as a security for both, as creating an obligation on the part of the company which is peculiarly and exclusively the subject of equitable cognizance. Chancery is, therefore, the, proper and indeed the only forum of relief to the respondents, and the action was rightfully prosecuted in that court.
 

 The objection to the respondents’ recovery on the ground of the omission of the respondents to -furnish to the company proper and sufficient evidence of their loss, is also not well taken. The pleadings show a willingness and an offer on the part of the company to pay to the respondents for their loss on the evidence submitted, the sum of one thousand dollars, the amount proved being one thousand four hundred dollars. I am not aware, nor does it appear that the company at this time made any specific objection either to the manner of the proof or the items of the account, or the principles upon which the estimate of loss is based. It is true that the company, at the time when they were furnished with the account of loss, requested the respondents to appear with their books before the executive committee of the company, for the purpose of explaining the account, so that the company might understand it. Upon this request one of the respondents, with the books and papers of their firm, did accordingly attend before that committee and. exhibited to them the books, and gave such explanations as he was capable of giving on the subject; and although the committee did not, in express terms, acknowledge themselves satisfied, yet they manifested no dissatisfaction, nor did they interpose any objection to the account; and their offering to liquidate the claim by paying $1000, which is about three-fourths of the amount, and coupling that offer with no condition or qualification, must, I think, be regarded as a virtual admission of the correctness of the entire account. It appears, it was not un*
 
 *58
 
 til they were subsequently written to by the respondents’ attorney, and threatened with a prosecution, that they began t<r make objection to the sufficiency of the account; and the objection then made was general, that the account was not such as was required by the policy, without pointing specifically to any particular objection. By the terms of the policy, the person sustaining loss by fire is required, within thirty days after such loss, to deliver to the secretary of the company “ a particular account of such loss.” What is particularly required to be stated in that account, the policy does not prescribe; but the respondents, as is disclosed by the testimony in the cause, for information in this respect, and to enable them to comply with the requirements of the policy, applied to one of the agent's of the company and made out and transmitted' to the company their account of loss according to the instructions and advice of the agent. This agent is a witness for the respondents, and his testimony shows not only his agency, advice and direction in the premises, but that he was a member of the company, and as such had previously sustained a loss therein by fire, and that his loss was paid by the company upon an account made out by him in the same manner, and upon the same principles as the account of the respondents; and that- the mode adopted in making out the loss of the respondents was the fairest and most accurate method of ascertaining their loss, provided their books were correctly kept. The accuracy of their books, besides being affirmatively established by the testimony of their clerk, was not questioned by the company, to whom they had been submitted for their inspection. I am inclined to think, therefore, that the account of loss furnished to the company was, at least, a virtual compliance with the requirement of the policy. If not, it devolved upon the company to make objection at the time, and to show wherein it was insufficient. The objection that the account was not such a particular account as was required by the policy, if made at all, was' too general and indefinite. It should have pointed out particularly wherein the account was incorrect, so as to have enabled the respondents, if really it was defective,
 
 *59
 
 to correct it. I am clearly of the opinion that this ground of objection, like the first, is not well taken.
 

 The objection arising out of the proceedings of the attorney general against the company as an insolvent corporation, subsequent to tlie filing of the bill by the respondents, and whereby the insolvency of the company has been judicially declared, is, I think, not available as a defence, otherwise than to authorize the modification of the decree of the vice chancellor, made by the supreme court, directing a
 
 pro rata
 
 collection out of the funds of the company.
 

 Nor is the objection resting on the forfeiture of the policy for the non-payment by the respondents of the assessment on their premium note, available. The pleadings do not, in my opinion, lay a foundation for such a defence. The general allegation in the answer, that the company has a legal defence to the claim of the respondents, set up in their bill, will not, I apprehend, admit of this specific defence ; but if it did, the particular matter here claimed would not be available, for the reason that the bylaws of the company, in order to impose upon the policy holders the legal liability to pay assessments, require the publication of thirty days’ previous notice of the assessment in a newspaper of the county, and of which publication of notice there is no evidence in the case. This defence is, therefore, clearly inadmissible for this reason.
 

 The decree of the supreme court must, therefore, be affirmed.
 

 Decree affirmed.1