By the Court. Bosworth, J.
This action was commenced prior to the enactment of the Code, and was tried in November, 1851. The questions presented to us for consideration arise upon a bill of exceptions taken at the trial, and are questions of law only. I am of opinion that the charge given to the jury was substantially unexceptionable, and that no error was committed at the trial, unless it was in refusing to nonsuit the plaintiff, or in the admission of evidence against the objection of the defendant.
An exception to the whole charge, and to each and every part thereof, is too broad, if any part of the charge be correct. It is the province of an exception to a charge at the trial to call the attention of the judge directly to the objectionable part, so that if there be error he may correct it at once. An exception to the whole charge is too broad, unless it is all wrong; and the addition of the words, “ and each part of it,” makes no difference. (Jones v. Osgood, Court of Appeals, April 16, 1850.)
The first question is, Was there sufficient evidence to justify submitting to the jury the question whether Hugh Smith made the promise stated in the second count of the declaration ? The testimony shows that on the 22d of October, 1835, at a public sale at the Merchants’ Exchange of a large number of Williamsburgh lots, the plaintiff purchased eight, as the highest bidder for the same, at prices amounting in the aggregate to $1,720.
By the terms of sale, ten per cent, of the purchase money was to be paid down, the balance on the 12th of November, when deeds were to be delivered to the purchaser, who was to have the privilege of giving his bond and mortgage for seventy per cent, of the purchase money, at one, two, or three years, at six per cent, interest.
Subsequently, but on what day does not expressly appear, Powers, the owner of the lots, executed and delivered to Mur *425 ray a deed of them, dated Hot. 12, 1835, and received from Murray his bond, and also his mortgage of the same lots, conditioned to pay $1,204, on or before the 12th of Hovember, 1838, with interest semi-annually at six per cent.—the bond and mortgage both declaring that they were given to secure the payment of part of the consideration money expressed in the deed from Powers to Murray. The $1,204 was seventy per cent, "of such purchase money. The balance of such purchase, being $516, was in fact paid by Murray to Powers on the 7th of December, 1835. I deem the date of this payment a significant fact in connexion with other evidence given. Whether Powers delivered his deed to Murray, and took from the latter his bond and mortgage, before or on this day, does not expressly appear. If before, then those papers were exchanged before any part of the purchase money had been paid. For the $516, which included the ten per cent, payable on the day of sale, was not actually paid until the 7th of December. On the latter day, Murray executed and delivered to Hugh Smith a deed of an undivided half of the eight lots, which expresses its consideration to be $258, being precisely half of so much of the consideration as Murray that day paid to Powers. The deed conveyed to Smith an undivided half of the eight lots, “ subject to the one half part of a mortgage of $1,204, given by the said Peter Murray to William P. Powers, on the said lots, tlie_ 12th day of Hovember, 1835, with interest at six per cent, payable half-yearly.”
Smith and Murray were both present at the auction sale on the 22d of October, 1835, and stood near each other when the sale of the eight lots of ground was going on. Murray there stated to James Moore, in the presence of Smith, that Smith “ was joined with him in the purchasing of said lots of ground on that day.” Smith expressed no dissent to the truth of this remark. .
There can be no doubt that Moore speaks of a conversation had at this particular sale. The lots were sold by Mr. Franklin as auctioneer. Moore says Franklin was auctioneer at the sale of which he was testifying; that he himself bought in four lots, but did not complete his purchase; that he knows of no other sale in which Murray or Smith was concerned; and that both *426 Smith and Hurray purchased at that sale. Powers says that Hoore bought four lots at that sale, but did not complete his purchase. I think the conversation of which Hoore testified took place at the time of the sale and purchase of the eight lots in question. It appears that Powers made a statement relative to this purchase, in the form of an account;
Debiting Hurray with the price . •. . $1,720
Crediting him with the amount of the bond
and mortgage.....1,204
Striking a “ balance to be paid ” of . . . $516
And also charging him for drawing the bond and mortgage, and the expenses of acknowledging and recording the latter, amounting to $7 124.
. There was evidence tending to show that this statement had been in the possession of Hugh Smith, and that he had written some figures thereon, but under what particular circumstances, or for what specific purpose, did not expressly appear.
It further appears that the deed from Hurray to Hugh Smith, although dated the 13th of December, was acknowledged, and the county clerk’s certificate of the official existence and signature of the person before whom it 'was made, was obtained on the 7th of December. They bear date on that day, and the deed was recorded on the 11th of December, two days prior to its date.
The subscribing witness to the deed testifies that he met the plaintiff and another gentleman in the street. Hurray said he wanted a man as a witness, and he went with them to the office of Judge Ingraham, and testified to the identity of Hurray. He saw no money paid at the time. This acknowledgment being made and certified, the certificate of the county clerk was obtained, and on the same day Hurray paid to Powers all of the consideration, except that secured by the bond and mortgage of Hurray. If in point of fact the bond and mortgage by Hurray to Powers, and the deed from him to Hurray, were not delivered before the thirty per cent, of the purchase money or any part of it was paid, then the evidence would be *427 quite strong to show that the delivery of the deed from Powers to Murray, of the bond and mortgage of the latter to the former, and payment of $516-, the balance of the purchase-money, and the delivery of the 'deed from Murray to Smith, and payment by the latter of $258, half of the portion of the purchase money that day paid to Powers, were contemporaneous transactions. It will be borne in mind that the consideration expressed in the deed from Murray to Smith is just one half of the part of the consideration money advanced in cash to Powers, and that the deed is by its terms made “ subject to the one half part of the mortgage ” given upon the eight lots to secure the balance of the purchase money.
It seems to me that the evidence was sufficient to justify the jury in finding that these .lots were bought by Murray and Hugh Smith on joint' account; that Smith advanced one half of the $516 paid in cash, and took a deed of an undivided half of the lots thus bought on joint account, on a promise that he would pay one half of the unpaid part o’f the purchase money to the holder of the mortgage executed as security for the payment of it according to the terms of payment stipulated in the mortgage; that there was sufficient evidence, exclusive of any to result from the fact, that the deed by its terms conveyed the undivided half of the lots “subject to the one half part” of the mortgage.
The judge charged the jury that the deed from Murray to Smith imposed no obligation upon the latter to pay the one half part of the bond and mortgage. I do not understand the defendant to complain that this was not sufficiently favorable so far as the effect of the deed itself was concerned. Such a deed, executed sincé the Revised Statutes took effect, would not, alone and of itself, obligate the defendant to pay any part of such bond and mortgage. There is not any express promise to pay it found in the deed, nor any recital of the fact of such an agreement having been made contained in it.
1 R. S. 738, § 140, declares that “ no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not.” I assume that the fair meaning of this statute is that no" obligation, covenant, or promise to do or pay anything shall be implied against either *428 party-to such conveyance, from the conveyance itself. If this he so, then it is obvious that the deed itself cannot per se be sufficient evidence of any promise not expressed in it to do or pay anything.
Though this be so, I think the law must be deemed to be settled in this state, that either party is at liberty to show for any purpose, except to prevent its operating as a valid and effective grant, that its consideration was different, greater, or larger than that named in it, and not wholly or at all pecuniary, in a suit by the vendor against the vendee to recover the actual consideration agreed to be paid, or in a suit brought by the vendee against the vendor on the covenants of seizin, or against incumbrances. (McCrea v. Purmont, 16 Wend. 460; Bingham v. Weiderwax, 1 Coms. 509; Haverly v. Becker, 4 Coms. 169.)
If the latter proposition be correct, then it follows that any evidence which legitimately tends to prove that the deed was executed and accepted-on a promise by Smith to pay half of the mortgage from Hurray to Powers was admissible. The opinion has been expressed that the evidence given was sufficient to justify the jury in finding that fact. If no improper evidence was admitted against the objection of the defendants, then the plaintiff is entitled to a judgment upon his verdict.
I do not think it follows that although the deed is not to be deemed of itself sufficient or any evidence of such a promise, therefore it is not to be admitted as evidence for any,purpose. It is admissible to prove the fact of the conveyance of the land, and what interest in it was conveyed. If it recited the fact that it was made upon a promise of Hugh Smith to pay a half part of the mortgage in question, then, on proof that he accepted the deed, and entered under it upon the premises conveyed by it, the deed might of itself be sufficient evidence of the making of the recited promise. (Torrey v. The Bank of Orleans, 9 Paige, 649, 658-9; S. C. 7 Hill, 260.)
The clause, “ subject to the one half part of the mortgage,” is possibly consistent with the idea that Hugh Smith bought the equity of redemption of an undivided half of the lots, subject to an incumbrance upon them to the extent of half the amount of the mortgage without any promise to pay it, and *429 that it was the understanding of the parties that it was optional with him whether he would pay it, or allow the lots to be sold to pay it, and that Murray was willing to sell in that way, talcing the risk of the undivided half of the lots being at all times an ample security for the one-half of the mortgage which he was personally liable to pay. However this may be, the clause is certainly consistent with the fact, if not some evidence of the fact, that the deed was made, delivered, and accepted upon a promise of Smith to pay one half part of it.
There are cases which strongly favor the proposition that a deed containing such a clause as this, and executed under circumstances operating less strongly in aid- of it, is evidence of, and virtually expresses a_ promise to pay the mortgage or encumbrance subject to which it declares itself to have been made. (Wolveridge v. Steward, 9 Bing. 60, Bosanquet, J.; Minor v. Terry, &c. 6 How. P. R. 211; Jumel v. Jumel, 7 Paige, 549-595.)
But conceding that it was neither an express promise, nor of itself evidence of a promise, to pay the mortgage, still no error was committed in any instruction given to the jury respecting it. The jury were substantially told that the deed imposed no obligation on Smith to pay one half of the bond and mortgage.
The statute of frauds has no application to the case. It may be conceded that while the contract remained executory, it was not binding on either party, yet when it had become executed, by a conveyance to Smith of his interest in the joint purchase, upon his promise to pay half of the original contract price, the promise could be enforced. (Fish v. Dodge, 4 Coms. 307-311.)
It needs no citation of authorities to show that a vendor, who has conveyed to a purchaser real estate sold, may recover from him the consideration agreed to be paid for the land so sold and conveyed.
For the reasons that have -now been given, we all agree in the opinion that the motion for a new trial should be denied, if there was no error in the decision of the judge,—admitting as evidence the affidavit of Hugh Smith, the two letters from him to the plaintiff, and the letter of Mr, Pinckney to the plaintiff.
The affidavit was made in October, 1846, and showed that *430 other land had been purchased of one Luther, in the name of Murray, on the joint account of himself and Hugh Smith; and that the latter was interested in such purchase to two thirds of its amount. It contained no allusion to . the purchase in question.
One of the two letters was dated the 13th of January, and the other the 3d of February, 1836. They do not allude to this transaction; but tend to show an intimacy in business transactions between the two, and that Mr. Pinckney acted as the legal adviser of Murray, as well as of Smith. , '
The letter from Mr. Pinckney to the plaintiff, according to its terms, inclosed some small bills alleged to be against the plaintiff and Hugh Smith, requesting payment the next day. There is no evidence that Smith saw or knew of the contents of this letter.
This evidence was objected to by the defendant, as being inadmissible for any purpose, and the decision of the judge admitting it was excepted to. The correctness of this decision is raised by a bill of exceptions.
' The plaintiff’s counsel does not contend that this evidence is admissible for the purpose of showing that the purchase in question was made on joint account, or that the deed to Smith was made on his promise to pay one half of the mortgage as a part of the consideration agreed to be paid for the land.
But it is contended that it was competent to show the situation of Murray and Smith towards each other, that they had had business transactions with each other of a similar character, not with a view to establish this to have been a joint transaction, or that the deed to Smith’was made and accepted on the promise alleged, but for the purpose of leaving the evidence tending to establish that the purchase was on joint account, and the making of the alleged promise, unimpaired in any respect by any such considerations, as that, if a joint purchase, it was, for aught that appeared, a transaction between entire strangers, and the only one that had ever occurred between them.
' On the other hand, it is insisted that the evidence was not admissible for any purpose; that it might have influenced the jury in coming to the conclusion that this was a joint transaction, and that, on a bill of exceptions, the court is not at liberty *431 to speculate upon the question whether the other party was prejudiced by the admission of improper evidence admitted against his objection, but that if it has been thus admitted, he is entitled to a new trial as a matter of strict right.
In Marquand v. Webb (16 J. R. 90), an incompetent witness proved a fact, which was fully proved on the trial by two other witnesses. The court said that “ although the fact proved by him was proved by two other witnesses, we cannot say, the cause coming before us on a writ of error, that his evidence may be rejected as unnecessary.” On this ground a new trial was granted.
In Osgood v. Manhattan Co. (3 Cowen, 612, 618), in the court for the correction of errors, it was held, that if improper evidence be given in the court below, though it be merely cumulative, the judgment will be reversed.
The court said: “ It is well settled, that if improper evidence be given, although it be cumulative only, the judgment must be reversed: for we cannot say what effect such evidence may have had upon the minds of a jury.”
In Worrall v. Parmelee (1 Coms. 519), the declarations of Brower, from whom both parties claimed to have purchased the property in controversy, were proved on the part of the defendant, to the effect that he had sold the property to the defendant. The plaintiff objected to this evidence, and excepted to the decision admitting it.
The plaintiff, in a subsequent stage of the trial, called Brower as a witness in relation to the sale, and his evidence tended strongly to show that he had sold the property to the defendant prior to the time when the plaintiff claimed to have purchased it.
The court said: “ There are many cases which hold that an error in the court below, which, on its face and by legal necessity, could do no injury, is not cause for a reversal of the judgment. But where the error is in the admission of illegal evidence, which bears in the least degree on the question in issue, it cannot he disregarded.”
There are cases, in, which, although improper evidence was nearly admitted, the courts refused to interfere, on the ground *432 that exclusive of such improper evidence, there appeared to he enough to sustain the verdict of the jury.
On examination, it will he found that those decisions were made in suits in which the question arose upon a case containing all the evidence, or in which the peculiar office of a hill of exceptions was inadvertently overlooked. (Cowen and Hill’s Notes, 787-8.)
The sole object and end of evidence is, to ascertain the truth of the several disputed facts or points in issue, on the one side or the other, and no evidence ought to be admitted to any other point. As it is a rule of pleading, that the issue should be on a material point, so it is an essential rule of evidence, that the proof should be material and relevant to the issue. (1 Stark. Ev. 169.)
If it be conceded, as I think it must be, that the affidavit and letters were not competent evidence to prove the truth of any issue, for the reason that they did not tend to prove it, it is difficult to specify any ground on which they could be admitted for any purpose. They were given in evidence before the plaintiff rested. They were not introduced to explain any fact proved or evidence given on the part of the defendant. If their admission as evidence can be sustained, it'must be for the reason that they are competent for the purpose of repelling some inference unfavorable to the plaintiff, which a jury might draw from his other evidence, or for the reason that they tend to prove some material issue. There is no ground for claiming the first part of the proposition to be true, unless the latter be also true. But they have no relation to the matters in controversy, and therefore are not admissible to aid in establishing the truth of the plaintiff’s case.
There is no intrinsic improbability that such a transaction occurred, as the plaintiff alleges. Whether it did or not, is a matter of proof. It does not' tend to establish the affirmative of the issue in this case, that another transaction of a like character had taken place between the parties, or that their business relations were intimate; nor can such evidence be given for the purpose of strengthening the evidence given to prove the alleged promise, or to divest it in any degree of any unsatis *433 factory features which it may possess, or of any unfavorable inferences, with which it may be supposed a jury may justly regard it.
I deem this evidence inadmissible for any purpose. And although I should not have felt at liberty to disturb the verdict, if this evidence had not been given, yet having been given against the objection of the defendant, and an exception having been taken to the decision admitting it, and the questions as to the admission of it being raised by a bill of exceptions, the court, according to the decisions cited, have no discretion to exercise, in determining whether a new trial should or should not be granted. Unless a discrimination can be made between this case, and the cases of Marquand v. Webb, Osgood v. The Manhattan Co., and Worrall v. Parmelee, the defendant would seem to be entitled to a new trial, as a matter of strict right.
The reason why the court will not always grant a new trial on a case, notwithstanding it appears improper evidence was given against the objection of the defeated party, and an exception taken to the decision admitting it, is, that a case is supposed to contain the whole evidence, and if the court of review is satisfied that substantial justice has been done, and that the verdict ought to, and would, have been the same, if the evidence excepted to had not been given, it will not disturb the verdict.
On the other hand, the theory of a bill of exceptions is, that it contains only so much of the evidence given as is necessary to properly raise the points sought to be reviewed on error, and therefore the court has not the means before it of accurately judging whether the objecting party may or may not have been prejudiced by the iinproper evidence, whose admission is complained of. It may, perhaps, be fairly claimed, that the bill of exceptions in this case contains all the evidence given. When the plaintiff rested, the defendant moved for a nonsuit on the ground, among others, “ that the evidence did not support either count in the declaration.”
A nonsuit was refused, and the decision of the court excepted to.
One of the points argued before us is, that the court decided erroneously in refusing to nonsuit. To properly presept tips ' *434 question before us, it was indispensable that all the evidence given when the plaintiff rested, should be contained in the bill of exceptions. As it is drawn, it may be said, perhaps, that it purports to contain the whole of it, and also all that was subsequently given by the defendant. If it may be assumed that the bill of exceptions contains the whole evidence, then there would seem to be no good legal reason for not refusing a new trial on a bill of exceptions, if in the same case, and on precisely the same evidence, one would be refused on a case where the evidence was objected to, and the decision admitting it excepted to in the same manner in the one case as in the other.
Whether the court of last resort, to which an'appeal can be taken on questions of law only, will countenance a practice, which may create the necessity of incorporating in the record the whole evidence, and of reviewing it, in order to determine whether improper evidence may or not have prejudiced the rights of the party excepting to its admission, it is unnecessary to attempt to conjecture. Unless it will do that, I cannot resist the conclusion, that the exception to the admission of the evidence in question was well taken, and that a new trial should be granted.
My .brethren being of the opinion that under all the circumstances of this case, the verdict should not be set aside on account of the admission of this evidence, the motion for a new trial must be denied, and a judgment in the proper form entered in favor of the plaintiff on the verdict.