## NEW YORK SUPERIOR COURT.

PHILIP S. JUSTICE agt. WILLIAM B. LANG, and others.

A *contract* for the sale of goods is not binding on the vendor, unless a note or memorandum thereof in writing, is *signed by the vendee* as well as the vendor, where no part of the goods are delivered, and no part of the purchase money is paid.

The statute of frauds requiring that "a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby," is not satisfied by being signed by one of the parties to the contract only, but it requires the contract to be signed by *both parties*. (McCUNN, *J. in an able opinion dissents.*)

*General Term, February*, 1866.

*Before* ROBERTSON, *Ch. J.*, BARBOUR *and* McCUNN, *Justices.*

APPEAL by the plaintiff from a judgment dismissing the complaint.

> EDMUND TERRY, *for plaintiff.*
> SAMUEL E. LYON, *for defendants.*

By the court, ROBERTSON, Ch. J.   The plaintiff seeks to recover damages for the non-performance by the defendants of a promise contained in an instrument in writing signed by them, which is as follows:

"NEW YORK, May 13th, 1861.

" We agree to deliver P. S. Justice one thousand Enfield pattern rifles (with bayonets, no other extras) in New York, at $18 each, cash upon such delivery ; such rifles to be shipped from Liverpool not later than 1st of July, and before, if possible."

Such instrument, or any similar one, was not signed by the plaintiff; no money was paid on account of the sum mentioned therein, nor were any of the articles mentioned therein ever delivered by the defendants and received by the plaintiff. On the trial, the complaint was dismissed.

This raises the question whether under the third section of the statute of frauds (2 *R. S.* 136), a contract for the sale of goods is binding on the vendor, unless a note or memorandum thereof in writing, be signed by the vendee as well as by him, where no part of the goods are delivered, and no part of the purchase money is paid. It is clear that the vendee is not bound by such contract in such case unless he signs it, and there is, therefore, no consideration for the undertaking of the vendor. The question, therefore, presents itself, whether the statute referred to by such section intended to alter, in regard to promise in writing for the sale and delivery of goods, the rule of the common law that a parol promise without a consideration was void, and has used language sufficient for the purpose. That rule was originally adopted to prevent frauds and perjuries. It assumes that it is unnatural and unusual for any party to intend legally to bind himself to do anything without some equivalent. If the promise be gratuitous, the law properly held its performance should be entirely voluntary. If a consideration is testified to, fraud in it or its inadequacy or failure may be set up as a defence. At the same time the law afforded to a promisor an opportunity to bind himself legally without a consideration, by the solemnity of a writing under seal. If proof of the parol agreement of the party not signing, to comply with the terms of such an instrument be necessary to make it binding on the parties signing, it is evident that some part of that which goes to make up the contract must depend on parol evidence, that evidence may be conflicting, and the whole evil intended to be guarded against is let in. If no proof of such parol agreement is necessary, a mere proposal or offer

in writing, could be converted into an agreement binding on the makers of it at the pleasure of the party receiving it at any time afterwards. The voidness of a parol agreement without a consideration, was not one of the evils intended to be guarded against by the statute of frauds, but dependence upon parol testimony to make up any part of what constitutes a contract of the kinds mentioned therein in the cases therein specified (*Abee* agt. *Radcliff*, 13 *J. R.* 297). Under the original statute of frauds, which did not contain the words " expressing a consideration," it was early held that a consideration must appear on the face of the instrument signed, otherwise the whole contract did not appear in writing (*Wain* agt. *Walters*), and it was so decided in this state (*Sears* agt. *Brink*, 3 *J. R.* 210). Clearly then, if a consideration was stated, which for any reason was not good, the written promise would not be binding. For if the written memorandum signed by the vendor alone should state that the vendor bound himself to sell and deliver certain goods in consideration of a mere parol promise of the vendee to buy them, without the payment of any part of the purchase money by the vendee, or delivery of any of the goods by the vendor, it would not set out a contract but a mere promise, without a valid consideration, and the vendor cannot be put in a worse situation by omitting to state the consideration in such memorandum. In the case of *Roget* agt. *Merrit* (2 *Caines*, 117), although the learned justice (SPENCER) thought it enough for the one who had to " perform the principal part " of the contract, such as to deliver the goods, to sign it, and the other to accept it, he yet held that the defendant was not bound, because the consideration agreed (orally) to be given by the plaintiff failed. I am unable to appreciate the distinction between a void or not binding consideration, and one that fails in regard to the obligatory character of the whole contract. The language of the section of the statute in question is " subscribed by the parties to be

charged thereby." This is in contrast with the language of the immediately preceding section (§ 2), where the words are " subscribed by the party to be charged," but the agreement recited therein are those in which one party is to receive all the benefits, and is not required to do anything. The first is an agreement to perform anything whose performance may require over a year. The second is a promise to answer for the debt of another, and the third is every agreement whose consideration is a marriage; the length of time in the first case, and the danger of a misunderstanding and imperfect resolution, if not perjury, in the second and third, make it proper to insist on the production of a written contract from the party agreeing to do the work, pay the debt, or for the consideration of a marriage do anything more, while proof of the consideration moving from the party for whom the work is done, to whom the debt is paid, or the person who marries in consideration of the promise, can safely be trusted to parol evidence. The sections of the same statute relating to conveyances creating, granting, assigning, surrendering or declaring interests, powers or trusts in lands (2 *R. S.* 134, §§ 6, 7), and to contracts for the lease or sale of lands, or any interest therein (2 *R. S.* 135, §§ 8, 9), are made still more definite, as the first are required to be subscribed only by the party creating, granting, assigning, surrendering or declaring such interests, powers or trusts, and the second only by the party by whom the lease or sale is to be made. But a sale of goods implies certain things of a definite character to be done on both sides, the terms of which are to be definitely fixed. The goods are required to be delivered, and the title thereby transferred by the vendor, and in consideration of a price, and the price is to be paid as such by the vendee in consideration of the transfer of the goods. The partial performance of either is made equivalent by the statute to a writing, undoubtedly on the same principle on which equity sustains a mere oral

contract to convey lands. " Parties to be charged in such case, means something more than the party who alone is to be charged" with the performance of work beyond a year, or the payment of the debt of another, or to do something in consideration of a marriage, which is an executed consideration. It means the party who is to pay the price, as well as the party who is to transfer the goods, the contract on both sides being of a well defined character, consisting of but one kind of obligation on each side, with whose performance the parties are respectively to charge themselves by the subscription. I am satisfied, therefore, that the intention of the statute in regard to a contract of sale and purchase of goods, was that the obligations on both sides, which are of a fixed and definite character, although their terms may vary, should˜be assumed by both parties by signing a written contract, in order to be binding on either ; and that this view is supported by the general objects of the statutes to secure certainty and prevent frauds, by the definiteness of the obligations to be assumed on both sides in a contract of sale, and the marked difference in language when the consideration on one side, which may be infinitely varied for certain specified obligations in the other, is left open and not defined, or the consideration is the peculiar executed one of a marriage, or the instrument to be signed affects land. The learned judge who delivered the opinion of the court in *Dykers* agt. *Townsend* (2 *N. Y.* 57), sustains this view when he says : " As an original question, I should have no hesitation in saying, in a case where a contract was entirely executory on both sides, and no part of the consideration had been paid, that it was necessary it should be in writing under this statute, and be signed by both parties thereto, in order to be binding on either." It remains to be seen, therefore, whether it is an original question.

Courts of equity, in enforcing the specific performance of agreements in relation to land, early took the ground

that they could be enforced if signed by the vendor (*Hatton agt. Gray, Eq. Cases, Abr.* 21, *pl.* 10). Of course, if it could be enforced against the vendor, such liability, although only in a court of equity, would constitute a sufficient consideration for the promise of the vendee. And if he thus became liable at law, the vendor would equally become so. To sustain such doctrine, it has been held that the vendee, by coming into court to enforce performance, has given his assent in writing to the contract by his bill of complaint, as under another section of the statute an answer has been held to be a sufficient declaration of trusts in writing.

In *Worrall* agt. *Munn* (1 *Seld.* 246), PAIGE, J., in delivering the unanimous opinion of the court, held that want of mutuality constituted no defence to a suit for specific performance. He also assigned as a reason, that the vendor or party to be charged was estopped by his signature from denying that the contract was validly executed, although not signed by the other party who sues for the performance. I do not see why the peculiar language of the statute would not be satisfied with the subscription by the vendor of a written obligation to convey in consideration of an oral promise to pay ; or why such oral promise to pay, in consideration of an oral promise to convey, should not be as binding as one to pay for land actually sold and conveyed. (*Thomas* agt. *Dickenson*, 12 *N. Y.* 364 ; *Murray* agt. *Smith*, 1 *Duer*, 412.) But even in regard to that section of the statute respecting lands, the question if settled, has not been so without conflicting and fluctuating decisions, as may be seen by reference to the cases examined by the learned chancellor in *Classon* agt. *Bailey* (14 *J. R.* 480). The cases of *Egston* agt. *Matthews* (6 *East*, 307), and *Sanderson* agt. *Jackson* (2 *Bos. & Pul.* 238), which were in reference to the last mentioned section, although cited by MARCY, J., in *Russell* agt. *Nicoll* (3 *Wend.* 112), as though

they referred to that in relation to sales of goods, have since been questioned in England.

Undoubtedly Lord KENYON had referred to the decisions in that section as well as others, when he and Baron GROSE in *Cooper* agt. *Edson* (7 *Term Rep. p.* 17), and himself again in *Charles* agt. *Bickett*, in the same volume of reports (*p.* 203) deplored the departure from the strict letter of the statute, the weakening of it by construction, and the creation of exceptions to it. All the cases, therefore, such as *Ballard* agt. *Walker* (3 *J. R.* 60), *Fenley* agt. *Stewart* (5 *Sandf.* 101), in which contracts for the sale of lands were involved, may be disregarded as standing on peculiar grounds, and not conclusive on this question.

I have already observed that the purchaser of lands has been considered as bound for the purchase money, although he did not subscribe the contract of purchase, provided the vendor did. Indeed, any other principle would make the statute, as observed by Lord REDESDALE in *Lawrence* agt. *Butler*, one of frauds, instead of against them. He also remarked that there was no late case in which equity had denied performance where one party only was bound. Nor do I understand the reasoning in *Fenley* agt. *Stewart* (*ubi sup.*), in this court, although quite artificial, as impugning that principle ; that merely advances the doctrine that the statute takes away the power of enforcing contracts, unless the party against whom they are sought to be enforced have subscribed some note thereof in writing, without adverting to the grounds on which courts of equity have enforced contracts, such as the one in controversy in that case. In the case of *Roget* agt. *Merritt* (*ubi sup.*), already alluded to, the court expressly avoided deciding the case upon a construction of this statute, and in the case of *Bailey* agt. *Ogden* (3 *J. R.* 399), decided six years afterwards in the court of last resort, it was held to be an open question. In the latter case (*Bailey* agt. *Ogden*), two memoranda had been made of the supposed contract, and

it was held were sufficient within the statute, and the deci-
sion was put upon that ground, Chancellor KENT expressly
declaring that the obligation of the plaintiff, who alone had
signed the agreement, was not a question about which they
were bound to inquire. In the case of *Merritt* agt. *Classon*
(12 *J. R.* 102), in the supreme court, the eminent counsel
employed on both sides put the case upon the single ques-
tion, whether the agreement which had been signed by a
broker was binding on both parties, and Justice PLATT,
delivering the opinion of the court, declared the sufficiency
of such memorandum to bind the defendant. In the same
case on the appeal, under the title of *Classon* agt. *Bailey*
(14 *J. R.* 484), the decision in the court below was sus-
tained upon that ground alone, although after a thorough
review of the cases, many of which were upon contracts
for the sale of land, the learned Chancellor (KENT), without
adverting to the difference of language of the two sections,
leaned in favor of the doctrine that signing by one party
was sufficient, yet expressly disclaimed " placing the cause
on that ground." In *Russell* agt. *Nicholl* (3 *Wend.* 112),
no objection was made on the trial to the contract; a non-
suit was granted on other grounds affecting the merits,
which were sustained by the supreme court on an appeal,
one of which was that the contract was on a contingency
which had not happened. I have already noticed that the
English cases cited by the learned judge who delivered
the opinion of the court in that case, as authority for his
incidental remark that the signature of the defendants to
the contract was a sufficient compliance with the statute,
referred to contracts for the sale of lands. In the case
of *Dykers* agt. *Alstyne* (*ubi sup.*), already alluded to, the
question was not raised, and the court of appeals refused
to consider it, because it might have been obviated by the
production of a counterpart. In the opinion given in it,
the learned judge who delivered it expressed the views
of which I have before given the language; It is true, he

adds, that " we think this " (the signature by defendant's agent) " was a sufficient compliance according to the settled construction which has been given to it," but as it was not necessary for the decision of the case, was rejected as a proper subject for consideration, is unsustained by any authority cited, and its decision seems to have been constantly avoided. I trust it will not be considered presumptuous to consider the question open, and to adhere to the other part of the same opinion, as founded on reason and not overthrown by authority.

I cannot, therefore, without supposing the statute of frauds to have been intended to overthrow the principle of mutuality in agreements for the sale of goods, and make a parol contract in such case without a consideration binding on the party signing, and introducing a latitudinarian construction of the statute, sustain the plaintiff's right of action.

The complaint was, therefore, properly dismissed, and the judgment and order denying a new trial must be affirmed, with costs.

McCUNN, J., dissenting. In this case, I regret to say, after having given it a careful and anxious consideration, I am unable to agree with the opinion pronounced at general term. That the defendants are clearly liable under the contract, I have not the shadow of a doubt. The principal question in the case is, whether the memorandum or contract signed by the defendants, is sufficient in law to bind them.

The facts are as follows : The defendants made an agreement with the plaintiff to furnish him with one thousand Enfield rifles, and thereupon entered into a contract, and signed the following memorandum of the same :

" NEW YORK, May 13th, 1861.

" We agree to deliver P. S. Justice one thousand Enfield pattern rifles (with bayonets, no other extras), in New York, at $18 each, cash upon such delivery, said rifles to

be shipped from Liverpool not later than 1st of July, and before if possible.

(Signed)                    " W. BAILEY LANG & Co."

Which agreement and memorandum were accepted by plaintiff. After the contract was entered into, the articles increased largely in value, and the defendants neglected and refused to supply the rifles, whereupon this action was brought.

I will remark here, that in looking carefully into all the evidence, I am constrained to the belief that the only reason which influenced the defendants in refusing to perform the contract was, that the rifles had nearly doubled in value from the time the contract was made until the time they were to be delivered. After the testimony was nearly closed a motion was made to dismiss the complaint, upon the ground that there was no consideration passing in the contract, and " that the contract was a mere *nudum pactum*," the motion was granted. Notwithstanding this, I am satisfied after a careful examination of the statute, and of all the American and English authorities on the subject, there was error in dismissing the complaint. The contract as stated above, was a full compliance with the requirements of the statute, and upon the facts presented the plaintiff was entitled to recover. It will be conceded that before the passage of the statute of frauds, a verbal contract between parties for any amount whatever was good. This being so, the statute simply altered the common law in this respect, that it merely requires for greater certainty, that a memorandum of the contract should be made in writing.

It is admitted that the form of the memorandum of the contract in this case, so far as words are concerned, is all that is required. The defendants simply contend that there is no mutuality, because the plaintiff did not sign a duplicate of the memorandum. This, in my opinion, was of no consequence.

The defendants and plaintiff made and entered into the contract; the one agreed to sell at a fixed and certain price, and the other to buy at that price. This was the mutuality, and the consideration expressed was the $18 per rifle. The defendants reduced the contract to writing, or made a note of the same, and signed and handed it to the plaintiff, who accepted it, and this was all that was required to complete the transaction, and if the defendants did not demand a duplicate of the memorandum signed by the plaintiff, it was their own fault; but without this, the defendants if they had delivered the rifles, could not recover in an action of *assumpsit*. (*See Gridley* agt. *Gridley*, 24 *N. Y. R.* 130.)

The mere acceptance of the note or memorandum in writing of the contract by the plaintiff was enough to bind him, and was sufficient to enable the defendants in a court of law, to compel the performance on his part. The law, in all cases, implies a promise to pay where it is the duty of one to pay; and no one will doubt for a moment that if the defendants had made and tendered the rifles, the plaintiff would have been compelled to pay. In the case of *Gridley* agt. *Gridley*, above cited, Mr. Justice DAVIES, in one of the most clear and forcible opinions in our books, lays down the principle that where a party accepts a written obligation from another, although he does not subscribe the same, yet in a court of law, he can be held responsible for the performance of its conditions, and such was declared to be the rule in the following cases: *Spraker* agt. *Van Altstyne* 18 *Wend.* ; *McLachlin* agt. *McLachlin*, 9 *Paige*, 534; *Van Orden* agt. *Van Orden*, 18 *Johns.* 30; *Lord* agt. *Lord*, 22 *Cow.* 60 ; *Olmstead* agt. *Burch*, 7 *Cow.* 530. Indeed, the cases are too numerous to cite, which fully establish this doctrine and sustain my conclusion.

In construing a statute, it is our duty to ascertain the true legal import of the words used by the legislature, and to collect the intention from the language of the statute

itself; but not to make out the intention from some other source of information, and thus interpret the words of the act so as to meet the assumed intention.

The danger of traveling out of the statute and looking elsewhere for the objects of the legislature, may be illustrated by the wide difference of opinion entertained by the members of this court in the present case. In order to know what a statute does mean, it is one important step to ascertain what it does not mean, and what it forbids must be consistent with what it permits.

Now the act says: "A note or memorandum of such contract must be made in writing, subscribed by the parties to be charged thereby." It does not say all the parties to the contract must subscribe the memorandum, and that it must be signed in duplicate; it simply says subscribed by the parties to be charged with doing the work or furnishing the goods; in other words, the vendor.

There is a stronger reason than any that has been urged, showing this to be the proper construction of the statute. In 1835, the question came up in the legislature, when other amendments were being made to the old statute of frauds, as to whether the words in the statute, to wit, "the parties to be charged thereby," should be amended so as to include the names of all parties to the contract, and that body rejected the proposed amendment, assigning as a reason that by virtue of the old act, and the adjudication thereunder, all the parties to the transaction had a complete remedy without such alterations. (*See Reviser's notes*, 3 *R. S. p.* 656, 2d ed.) It is clear, therefore, that these words must now be taken in their fixed and adjudicated sense, and that they absolutely mean that the statute should be satisfied when the parties to be charged therewith signed the memorandum. And this interpretation is supported in reason and in equity. The contract is binding on both parties, because the promise on the one side to sell at a certain fixed price, and the other to buy at such

price, is the mutual consideration for each other, and the statute only requires that a note or memorandum of the contract must be in writing; it does not say, and does not mean, that it shall be signed in duplicate by all parties to the contract. Moreover, a party should not be allowed to take advantage of his own neglect in not getting and retaining a copy of the contract.

After the original act was passed, I will· show hereafter that a construction was given it, and that construction has been strictly followed to this day. It is the construction that naturally presents itself at once to the mind, and under it all parties have a perfect remedy. Now if this be so, and there is not a single authority to the contrary, why unsettle the law at this day, and that to no purpose and for no cause. On a careful examination of all the authorities from the time of the passage of the original act, it will be seen that the courts, both in England and America, have uniformly held that when a memorandum of a contract is committed to writing, and signed by the party to be charged thereby, and accepted by the other, this is entirely sufficient.

Precedent serves to illustrate principles and give them a fixed authority. We must respectfully regard the authorities of prior adjudication, which form in themselves an established rule, and when they violate no principle, we must discriminate the actual grounds of decisions from any casual observations that accompany them, because these observations form no decisive resolution, no adjudication, no professed or deliberate determination.

In the case of *Davis* agt. *Shields*, disposed of in the court of errors of this state in 1841, both the chancellor and Mr. Senator VERPLANCK, laid down the doctrine " that the name of the party to be charged therewith was only requisite to the note or memorandum." Indeed, Senator VERPLANCK, in one of the most clear and forcible arguments I have ever had the pleasure of examining, establishes this

doctrine beyond a doubt, and this rule was re-enunciated in the court of appeals of this state in the case of *Worrall* agt. *Munn* (5 *N. Y. R.* 229), where Mr. Justice PAIGE says: "That it is only necessary the memorandum should be signed by the vendor, the party to be charged therewith." In *Dykers* agt. *Townsend* (24 *N. Y.*), a side remark of Judge HOYT, a mere *obiter dictum*, and not intended as law, is cited as indicating that he entertained a contrary opinion. He says: "As an original question, he would have no hesitation in saying in a case where a contract is executory, that it was necessary it should be in writing under the statute, and be signed by both parties thereto," but in another and latter part of his opinion (*page* 60) he takes all this back, and lays down the law after this clear manner: "In this case a note or memorandum of the contract was made in writing and signed by the defendant, and we think that this was a sufficient compliance with the statute according to the settled construction which has been given to it." Now after this candid avowal of the law on that point, it cannot be fairly said the question involved and now under consideration did not come up in that case. It did come up, and was settled by an unanimous bench, and the views I entertain are correct.

The next case our attention is called to is that of *Bailey* agt. *Ogden* (39 *T. R.* 399), a case in no way similar to the one at bar. That was a case where the plaintiff, the vendor, made an entry in his own books of the sale, of which entry the defendant, the vendee, knew nothing. But even in that case, KENT, Chief Justice, lays down the principle "that it is only necessary for the party to be charged to sign the contract." The case of *Lawrence* agt. *Butler* (1 *Schoales & Lefroy*, 201), has no resemblance whatever to the case under discussion. That was a case of a mistaken contract about a lease, and the court held that a performance could not be compelled because there was a mistake as to the power to sell, and the plaintiff knew of the mis-

take before he accepted the contract. In the case of *Roget* agt. *Merritt*, I do not agree with the defendant's counsel in saying that this question was passed without adjudication. On the contrary, the question came fairly up, and was fully discussed and passed upon, and in my view that decision settles the law in this case in favor of the plaintiff. In announcing the opinion of the court in that case, Mr. Justice SPENCER lays down the rule that only the parties to be charged are required to sign the memorandum, and he remarks that if there are acts to be done by both parties (such as the exchange of commodities to be manufactured), there is no doubt but that such contract would be obligatory if signed by one party and accepted by the other. The case of `Classon` agt. *Baily*, fully corroborates the views I entertain in this respect. In that case, the chancellor, in announcing the opinion of the court of errors, cites numerous English and American authorities, all clearly establishing the fact that a memorandum signed by one party and accepted by the other, is sufficient under the statute.

In the case of *Russell* agt. *Nichol* (3 *Wend.* 118), before referred to, that most learned and able Judge MARCY, lays down a similar doctrine to the one I entertain, and this clear principle can be no better illustrated than by the exposition of that eminent judge. " It was insisted," says Governor MARCY, " that the contract declared on was within the statute of frauds void for not being reduced to writing and signed as the statute directs. This objection is not sustainable. It is very clear that the signing by the defendants is a compliance with the statute."

The case of *Charles* agt. *Bickett* (7 *Term R.* 202), is not at all a case in point. The agreement in that case was by parol. It is true, however, that some remarks were made by Lord KENYON, not only not bearing on this case, but entirely foreign to the record, and which decide nothing. The last and only remaining case cited by counsel for

defendants is that of *Ballard* agt. *Walker* (3 *Johns. Cases,* 60), which confirms my views in this case.

The question under consideration should not demand of me so much care and attention, especially since we find two cases in this very court precisely similar, where similar memorandums were sued upon, and where this court were unanimous in sustaining the old and well established rule, that it was only necessary for the parties to be charged thereby to sign the memorandum. I refer to *Fenly* agt. *Stewart* (5 *Sandf. S. C. R.* 101), and also to the case of *West* agt. *Duer* (1 *S. C. R.* 277). The memorandum in the first case was as follows :

" For a valuable consideration to us in hand paid, we have sold A. M. Fenly two thousand five hundred bushels of canal oats, at forty-five cents per bushel of thirty-two quarts, to be delivered in this city at any time, at our option, between the 1st and 15th of June next; to be cash on delivery. New York, April 23, 1847.

" A. W. Otis & Co."

The presiding justice delivering the unanimous opinion of the court, employs this language: " The statute of frauds requires not that the contract should be signed by both parties, but the parties to be charged thereby ; and the uniform construction has been that the signature by the defendants alone, that is, by the parties sought to be charged, is sufficient to sustain the action. This construction has proceeded, not on the ground that contracts need not be mutual, but that the statute in certain enumerated cases has taken away the power of enforcing contracts, which would otherwise be mutually binding, unless the parties against whom they are sought to be enforced, have subscribed some note or memorandum thereof in writing. * * * It necessarily follows, however, from the provision of the statute, that all inquiry as to whether or not a contract was originally mutual, is immaterial. It may be enforced against the party who has subscribed a note

or memorandum of it, though the other party by not having signed, is by the express words of the statute freed from its obligation. The objection, therefore, of want of mutuality, is not well taken.

In the case of *West* agt. *Newton* (1 *Duer*, 277), the following contract was sued for :

" I do hereby agree to deliver to J. Selby West, at such places as he shall direct, during the months of August, September and October next, in about equal quantities each month, five hundred tons of egg and five hundred tons of good size stove coal, best quality of red ash, peach orchard, at five dollars per ton, cash, or interest added after delivery, as he shall prefer; the above coal to be in good order and gross tons, credit not to be over three months. New York, April 16, 1846.

" MORRIS BUCKMAN,

" Agent for Jacob Carrigan, Jr."

The presiding justice in delivering the unanimous opinion of the court says : " The objection that the memorandum was insufficient under the statute, we incline to think is not well taken. The contract is not a mere proposal, but is mutual on its face, since the price stipulated to be paid for the coal is a sufficient consideration for the promise to deliver it."

Now can there be two cases more in point than these, especially when we find the contracts and the facts precisely the same as in this case, and do they not, unreversed as they are, settle the law so far as this court is concerned, especially when we remember that at that day the court was honored by the presence of an Oakley, a Duer and a Sandford, and when we consider the further fact that the only lights or adjudications the court have now to guide them in their deliberations, are precisely the same lights and the same adjudications the judges of that day enjoyed.

The judgment of dismissal should be reversed and a new trial ordered, with costs.