MATTHÍAS M. COMBS

*v.*

THE SHREWSBURY MUTUAL FIRE INSURANCE COMPANY.

In March, 1869, a mutual insurance company insured a mill of Silvers and Woodward, for $3,000, for five years. In May, 1869, they, with the company's consent, assigned the policy, by an absolute assignment (but, in fact, only as collateral security), to one Job as mortgagee. In April, 1871, Woodward conveyed his interest in the mill to Silvers, and orally assigned his interest in the policy, also. The mill was burnt down in April, 1872. Before Woodward's transfer, the company paid dividends to Woodward and Silvers; after that, to Silvers alone. Proof of loss was made.May 2d, 1872, and Silvers assigned his interest in the policy to the complainant, May 13th, 1874. Job's mortgage was paid in April, 1878, but he still retains possession of the policy, under his assignment. On general demurrer to the bill,—*Held*,

(1) That it is not necessary to set out the by-laws of the company in the bill.

(2) That an averment that the proof of loss was made by Silvers, without stating that it was certified by a magistrate, is sufficient.

Combs *v.* Shrewsbury Mut. Fire Ins. Co.

(3) That Silvers's assignment of his interest in the policy *after* the loss, is not within the clause which requires the consent of the company to be obtained to the assignment of any policy.

(4) That the fact that the absolute assignment to Job is still in existence, although his mortgage has been paid; that, as to Woodward's assignment to Silvers, though it was merely oral and unaccompanied by express consent of the company, the company, by paying dividends to Silvers afterwards, waived their strict right to object to such assignment, and that, as alleged, the company, knowing of Woodward's conveyance of the property to Silvers, led Silvers to believe that it regarded the policy as valid in his hands,—all combine to render the remedy at law inadequate and to give equity jurisdiction.

Bill for relief.   On general demurrer.

*Mr. W. H. Vredenburgh,* for demurrant.

*Mr. S. M. Schanck* and *Mr. W. D. Holt,* for complainant.

THE CHANCELLOR.

The Shrewsbury Mutual Fire Insurance Company, by its policy of insurance, dated March 16th, 1869, insured John Silvers and Charles H. Woodward against loss by fire, to the amount of $3,000, on their grist-mill in Hightstown, for five years from March 24th, 1869, that is, from that date until March 24th, 1874.   The policy, by its provisions, was to be void in case other insurance should be effected without giving notice thereof to the company, and obtaining its acknowledgment thereof in writing, either by endorsement on the policy or otherwise.   Other insurance was obtained. The mill was the partnership property of the insured.   May 10th, 1869, they, with the consent of the company, assigned the policy to Archibald F. Job, by an assignment absolute in its terms, but, in fact, merely as collateral security to a mortgage for $7,000, given by them to him on the mortgaged premises.   April 1st, 1871, the partnership was dissolved, Woodward thereupon assigning his interest in the property to Silvers, and orally assigning therewith his interest in the

policy, also.   The mill was burnt down April 13th, 1872.
From the time of the dissolution until the loss occurred,
Silvers was the owner, subject to the assignment to Job, of
the entire interest of the insured in the policy.   The com-
pany had notice of, and consented to the additional insur-
ance before mentioned.   From the time when it was
informed of it, down to the time of the dissolution of the
copartnership, it paid dividends from its profits to Silvers
and Woodward as holders of a valid policy, and it in like
manner paid such dividends from the profits to Silvers, as
the holder of a valid policy, after the dissolution and down
to the time of the loss.   Proof of loss was made May 2d,
1872.   May 13th, 1874, Silvers assigned his interest in the
policy to the complainant.   The mortgage held by Job, and
to which the assignment to him was collateral, was paid off
on or about April 1st, 1878, but he still has the possession
and control of the policy under the assignment thereof to
him.

The bill was filed October 1st, 1878.   The company filed
a general demurrer.   Silvers died in January, 1879, intes-
teste, and no letters of administration have been taken on
his estate.   The bill was amended by making this statement.
On the hearing, the following causes of demurrer were
assigned : That the bill does not set forth the by-laws of the
company, which, according to the policy, constitute part
of the contract of insurance ; that it does not make the
necessary averments in reference to the certificate of the
magistrate or notary as to the *bona fides* &c. of the loss ; that
it does not state that the company consented to the assign-
ment by Silvers to the complainant, and, further, that the
complainant has an adequate remedy at law.

The bill states that the policy was made and accepted in
reference to the charter and by-laws of the company, which
were to be used and resorted to in order to explain the
rights of the parties to the policy in all cases.   It does not
appear that the by-laws contained any condition or provi-
sion which it is necessary to set forth in the bill.   The bill

Combs *v.* Shrewsbury Mut. Fire Ins. Co.

avers that after the loss, and on or about May 2d, 1872, Silvers gave immediate notice of the loss to the company, and to its managers and to its secretary, at their office, and made proof thereof and all declarations and certificates in conformity to the conditions specified in the charter and by-laws of the company, and also in conformity to the conditions of insurance annexed to the policy. It avers, also, that Silvers gave immediate notice of the loss, and made proof of the loss and made all the requisite declarations and certificates. The criticism is, that the certificate of the magistrate or notary is to be made by him, while the bill states that it was made by Silvers; but the statement is sufficient. It signifies that Silvers furnished all the requisite certificates and declarations. Certainty to a common intent is all that is required.

The assignment to the complainant, after the loss occurred, is not within the provision of the policy declaring that the liability of the company shall cease in case of an assignment of the policy in whole or in part without the consent of the company. An assignment, after the loss has occurred, is not an assignment of the policy, but of the claim for the insurance, and is not within the inhibition of the clause just referred to. *Phillips on Ins.* § *108; May on Ins.* § *386.*

The question whether the complainant has an adequate remedy at law, remains to be considered. The assignment to Job is still in existence, and it is absolute in its terms. But he has received his mortgage debt, and, therefore, has no right whatever in equity to the insurance money, though he appears to have the right to sue. The company consented to the assignment to him, and he probably appears on its books to be the owner of it. By its charter it is provided that no transfer of any policy shall be valid until it shall be entered on the books of the company and certified by the secretary. *P. L. 1838 p. 190* § *9.*

The bill is filed against Job, as well as Woodward and the company, and it prays answer on oath as to whether

Job's debt has not been paid and his interest in the policy therefore extinguished. The assignment by Woodward to Silvers of his interest in the policy was oral merely, and unaccompanied by a delivery of the policy. The policy was then in the hands of Job, as it still is. The assignment was a merely equitable one. If the company, knowing of it, and of the transfer by Woodward of his interest in the property, gave Silvers reason to believe that it regarded the policy as valid in· his hands as sole owner, the complainant is entitled to have the assignment and his right under it established in equity as against Woodward and the company. *Cook v. Black, 1 Hare 390.*

The payment of dividends to Silvers as being sole owner of the policy, after the transfer of Woodward's interest in the property, would be proof of assent to the assignment of Woodward's interest in the policy and the transfer of his interest in the property. Such dealing with Silvers would have prevented him from obtaining insurance elsewhere, and would have lulled him into security and prevented him from taking any action to notify the company or to obtain its consent, because he would not have conceived either to be necessary. Such conduct on his part would be regarded as a waiver. *May on Ins. § 508.*

In view of the fact that Silvers had only an equitable assignment of Woodward's interest in the policy; that Woodward, at the time of the loss, had no interest in the property, and has never since had any, and has none now; that the title to the insurance money stands by written assignment, assented to by the company, and so entered on its books, in the name of Job, who has the policy in possession, though he has in fact no interest therein; that, by the charter of the company, no assignment of a policy is to be valid unless it is entered on its books and certified by the secretary, and that the bill prays a discovery, not only from Woodward, but from the company, which latter, as the bill alleges, has in its possession the written evidences of the payment of dividends to Silvers and Woodward before the

dissolution of the copartnership, and to Silvers after that time ; that the bill seeks discovery from the company also as to the notice which it had of the additional insurance—it seems clear that the complainant has not an adequate remedy at law, but is entitled to the aid of equity.

In *Bodle* v. *Chenango Co. Mut. Ins. Co., 2 N. Y. 53,* where the insured sold an undivided interest in the property which was the subject of insurance, to another person, and the insurance company consented that the policy should " remain good " to the insured and his alienee, and an entry was made in their books recognizing the alienee as a member of the company, but there was no assignment of the policy, it was held that no action at law could be maintained either by the insured or his alienee, or by them jointly, to recover for the loss of the joint property, but that the case was a proper one for relief against the insurance company in a court of equity, on the ground that there was no assignment, and the company, by its recognition of the transfer of an interest in the property, and its declaration and undertaking that the policy should be available to both the insured and the alienee, had created an obligation peculiarly and exclusively cognizable in equity.

The case in hand is within the reasoning of that one. Here there was no assignment, but an equitable one from Woodward to Silvers, of his interest in the policy. Woodward transferred all his interest in the property before the loss, and had none in it when the loss occurred. Job has title to the policy, but has in fact no interest in it. Whether, where one of two joint owners of property insured transfers his interest in it to the other, that is an alienation within the prohibition contained in the policy, is not settled. Under the circumstances of the case, the complainant's remedy at law should be clear before relief is denied to him here. He appears to be liable to be defeated at law by technical difficulties. A remedy, therefore, should be accorded to him in this forum. *Burton* v. *Gore District M. F. I. Co., 12 Grant's Ch. 156.*

But while the suit may be maintained in equity, the averments of the bill on the subject of the waiver are insufficient. It does not appear that the company knew of either the assignment or transfer when it paid the dividends to Silvers, after the dissolution. The right to relief may not depend on that, however.

The demurrer will be overruled, but without costs, and leave will be given to amend in the respect just indicated.