CAMPBELL v. PREFERRED ACC. INS.
CO. OF NEW YORK.

No. 352.

Circuit Court of Appeals, Second Circuit.

July 12, 1938.

Jos. L. Roesch, of New York City (Harold B. Elgar, Irving I. Goldsmith, and Frank Rashap, all of New York City, of counsel), for appellant.

Epstein & Brothers and Arthur J. Brothers, all of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury in an action to recover upon two policies of accident insurance. The plaintiff is the wife of the assured and the beneficiary under the policies in case of his death. The suit turned chiefly upon whether she had proved that this had resulted "directly, independently and exclusively of any and all other causes, from bodily injury effected solely through external, violent and accidental means", in the words of one policy; or "directly, independently and exclusively of any and all other causes from bodily injury effected solely through accidental means", in the language of the other. For the purposes of this case the two phrases may be taken as the same. The plaintiff's evidence was in substance as follows. The assured was a man fifty-eight years old, employed in a broker's office, who had been under the treatment of one Mays, a heart specialist, for two years before his death. Upon an autopsy his heart was found to be nearly twice as large as normal, and his coronary artery showed "moderate" sclerosis. The arteries in the brain were also somewhat sclerotic, his kidneys were somewhat atrophied and his viscera congested. The physician who performed the autopsy concluded that death must have been caused in part anyway by this degeneration of his

organs, but he knew nothing of the actual circumstances. The assured was found dying at the foot of two flights of steps leading to the platform of a subway in New York. The upper of these flights was of ten steps, the lower of twelve; they were separated by a platform about four feet wide. Nobody saw him fall, but two witnesses were close at hand. One, a man, passed him just as he was at the top of the first flight, and heard him stumble shortly after the witness had reached a passageway leading along the upper level. Immediately there followed a "fall with a terrific thump", loud enough to draw the witness back to the stairway, where he saw the assured rolling down the second flight. When he came to rest his head was on the second or third stair; beneath it was a "pool of blood". The other witness, a woman, was walking along the platform of the subway out of sight of the stairs though only three or four feet away. She heard a series of "thumps", which made her hurry towards the stairs, down which she saw the assured rolling. He was then near the top of the lower flight, and, as he neared the bottom, he seemed to her to be taking off his glasses. He struck his head on several of the steps and at the fourth he seemed to "go limp"; when he stopped, his body was altogether on the platform, parallel with the steps; a little blood oozed from his mouth. He had several cuts and bruises on his head. The plaintiff called one physician as an expert; the defendant called the physician who made the autopsy, and Mays, who had attended the assured, as we have said. The plaintiff's expert, though he had never seen the assured, was of opinion from the facts as stated to him that he had been killed only by repeatedly striking his head upon the steps; the other two thought that the diseased condition of his heart was chiefly responsible. The plaintiff's expert was examined by hypothetical question framed without including the results of the autopsy, or any consideration of the condition of the assured's heart. That was proper enough because the autopsy had not yet been admitted; but if nothing more had appeared, a question might have arisen as to the sufficiency of the plaintiff's proof at the conclusion of the whole case. This would have been because the jury could not have rationally disregarded the findings in the autopsy, and after it had been admitted, the plaintiff's case would have contained no testimony that the assured, diseased as he really was, died exclusively from violence. All that it would have contained would have been that a person presumably in ordinary health, falling as he did, must have been so killed, which was a very different matter. But the defendant itself cured any such defect by its cross-examination, in which it appeared that the expert in fact knew of the autopsy and accepted it as true, and that it did not affect his conclusion. Since the autopsy fully disclosed the deceased's condition even better than Mays' testimony, the jury was possessed of the expert's opinion upon the whole facts, and had a basis for finding that the blows, and the blows alone, killed the assured, diseased though he was. The weight to be given to that opinion against the testimony of the defendant's witnesses was for the jury; the plaintiff's expert, though somewhat pragmatic, was well qualified and nothing appeared to discredit him. There was enough evidence to support the verdict.

One of the policies required the beneficiary within ninety days to file a proof of loss upon forms to be furnished by the insurer. The defendant did furnish such forms; they were in several parts; the first was for an eye witness to the death; the second, for "the last attending physician". An eye witness did fill in the first part, but the second was left blank, and the defence is that as Mays had attended the assured until shortly before his death, his statement was necessary. However that may be, the defect was apparent upon the face of the proof itself, which the insurer kept without objection until the period for filing had expired. The plaintiff did not mislead the defendant; she did not say that there had been no "last attending physician"; to leave the statement blank was not to declare so; and indeed, it is a little doubtful whether the purpose of the form was more than to require a statement of any physician who attended the assured at his death, which Mays did not do. At all events the defendant excused any better performance of the condition by keeping the proof of claim until too late for the plaintiff to mend it. Bodle v. Chenango, etc., Co., 2 N.Y. 53; Armstrong v. Agricultural Insurance Co., 130 N.Y. 560, 565, 566, 29 N.E. 991.

Various objections were made during the trial to rulings upon evidence; but none are of enough importance to justify discussion except the refusal to allow the defendant to examine Mays as to the de-

ceased's condition. When the defendant called him as an expert and procured from him an opinion as to the cause of death, the plaintiff stopped any further disclosure by a claim of privilege. Later on cross-examination she herself brought out some of the results of his examination of the assured, and then the defendant on its part asked to examine him further. This the judge ruled out. Assuming that the plaintiff lost her privilege by her cross-examination, the substance of all that the witness had learned was brought out; and in any event the autopsy showed much more exactly than anything else what the assured's condition had been. The error was of no importance, and we will not reverse for it, even in a close case.

Judgment affirmed.