## GEORGE H. NELDON v. SAMUEL T. SMITH.

1. A sale of coal as soon as it is delivered from the mines, upon a stipulation that it is not to bind, if the coal company do not deliver it according to a certain proposal, which is to sell five hundred tons or more for immediate delivery, for a fixed price, and at a certain place, is conditional and mutual.

2. If coal is received from the mines after the time named in the contract, the seller is not bound to deliver it, nor is the buyer bound to receive it. The buyer has not an option to take it for the price named in the contract.

3. The term "immediate delivery," explained to mean, among coal shippers and dealers, a delivery within the present, or in some cases, the succeeding month, and thus interpreted in this contract.

4. Where coal was accepted by the seller, by a parol agreement with the company after the breach, and in settlement of damages claimed for the breach—*Held*, to be by way of accord and satisfaction, and not a delivery under the former contract.

In case. On motion to set aside the verdict.

At the trial of the above cause in the Sussex Circuit Court, in April Term, 1872, a verdict was rendered for the plaintiff upon the facts, and several points of law were reserved for the opinion of this court.

The following are the material facts of the case.

July 29th, 1865, a contract in writing was signed by the plaintiff and defendant in these words:

"I agree to take from S. T. Smith, three boat loads of coal, deliv'd at Waterloo, for $5.65–100, to be either egg or stove, as soon as coal is deliv'd from the mine, from this date July 29, '65, *said Neldon to take it in boats at Waterloo, and does not bind said Smith unless Del., Lack. & West. Co. deliver the coal to him as per offer of B. S. French's, per letter of July 11th, 1865.*

"G. H. NELDON,

[STAMP.] "SAMUEL T. SMITH."

The former part of the agreement is in the handwriting of the plaintiff, and the latter was written by the defendant.

This was entered in a memorandum book of the plaintiff.

In a few minutes after this was signed by the parties, they went to the defendant's store, and there the defendant drew up a contract similar to the above in his own memorandum book, saying he would like to have a copy of the contract they had made; and it was also signed by them.

It reads thus:

"Engaged July 29, 1865, to G. H. Neldon, Esq., three boat loads coal, at five dollars and sixty-five cents ($5.65) per ton, m'fst weight, delivered in boats at Waterloo, provided Del., Lack. & West. R. R. Co. deliver the coal to me agreeable to price and conditions of B. S. French, agent's letter of July 11th, 1865, the coal not to be shipped out of the present stock in yard at Washington, but to come fresh from the mines.

"July 29th, 1865.              "SAMUEL T. SMITH,
                               "GEO. H. NELDON."

Directly below this entry was the following, in the defendant's writing:

"P. S.—If said coal is not delivered by Sept. 1st, (agreeable to Mr. French's offer to me) then I agree to rescind my engagement with Mr. Neldon, and the above is to be considered void and of no effect."

[STAMP.]

The letter of B. S. French, referred to in these two entries, is as follows:

"The Delaware, Lackawanna & Western R. R. Co.—Coal Department:

"Agency at Washington, N. J.,
                               "July 11th, 1865.

"S. T. SMITH, Esq.—*Dear Sir:* I will make you 500 tons or more for immediate delivery, at $5.25, at Waterloo. This will give you a good wholesale commission. I think I have sold no coal at your place for less than $6. This offer holds good only to the 20th of this month.

"Yours truly,         "B. S. FRENCH, *Agent.*
                      "per C. E. French."

By letter of July 15th, 1865, from B. S. French, agent, to the defendant, S. T. Smith, at the request of the latter, the privilege of acceptance was extended to July 30th. The defendant wrote a letter to French July 28th, 1865, accepting the offer of July 11th, 1865, and time extended, per letter of the 20th inst., to 30th inst.

There was a strike in the company's mines. It began about July 25th, and continued until about September 26th, during which time the production and shipment of coal from these mines were entirely suspended.

August 30th, defendant wrote to plaintiff this letter:

"G. H. NELDON, Esq.—*Dear Sir:* I have heard nothing from the Del., Lack. & West. R. R. Co. as to shipping me coal. Understand the miners have not resumed work yet. By conditions of our agreement, the same is rescinded and of no effect if coal is not delivered by September 1st. If they commence shipping, which I think they must soon, will see you and make another arrangement. Will give you the advantage over all others, and the refusal of my surplus. I may see you soon, when we will talk the matter over.

"Yours truly,        "SAMUEL T. SMITH."

September 4th, 1865, plaintiff wrote as follows:

"S. T. SMITH, Esq.—*Dear Sir:* As soon as you learn that coal arrives in Washington please let me know, as I am in want of some under my contract with you."

"Yours truly,        "GEO. H. NELDON."

September 5th, defendant answered:

"G. H. NELDON, Esq.—*Dear Sir:* Your favor 4th inst. received. I wrote you day or two ago of the expiration of our contract by limitation, and stated that if I got more coal than I needed I would give you refusal of it, which I still intend doing, and will make price lower to you than any other parties. There is no coal coming in Washington yet, and I can learn of no indications, as the strike continues the same.

"Yours truly,        "SAMUEL T. SMITH.

"P. S.—You will doubtless remember that our contract is

conditioned to be null and void if coal was not delivered previous to the first inst. S. T. S."

September 1st, 1865, the plaintiff went to Waterloo, saw the defendant there, and demanded the coal. Defendant replied that he had not any, that none had arrived ; that the contract was void by its terms, and refused to deliver.

September 27th, the company, by circular, notified the defendant, that by reason of the strike they cancelled their contract to deliver coal to him.

Afterward the defendant went to the company's office in New York, and insisted on the delivery of coal to him under the contract. The company replied that they were discharged by the rules of the trade in consequence of the strike. The defendant threatened suit for damages unless they satisfied him. The price of coal had advanced, and he was willing to take the difference between the contract price and the price for which it was then selling. Finally a settlement was made and the company directed Mr. French to ship the coal to the defendant at the price agreed upon to satisfy his claim.

A boat load of coal, 66 2-20 tons, had been shipped to defendant July 18th, 1865. This was ten days before the contract was accepted.

Between October 7th and November 30th, the company shipped to defendant about 465 tons, in seven or eight different boats at different times. The defendant agreed to accept the boat load of coal shipped July 18th, as part of the 500 tons, and thus more than that amount was delivered, about 530 tons in all, at the rate of $5.25 per ton.

The action was brought in this court June Term, 1871.

Argued at November Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and SCUDDER.

For the plaintiff, *T. N. McCarter* and *H. C. Pitney*.

For the defendant, *R. Hamilton* and *J. Vanatta*.

SCUDDER, J. The principal question of law in this case for our determination relates to the true construction of the written contract between the parties in this particular : whether the terms impose a reciprocal obligation to deliver and receive the coal bargained for within a certain time, with the condition that the sale shall be void if the coal does not arrive within such time ; or whether the time may be extended at the option of the purchaser until delivery shall be made.

The defendant insists that after September 1st, 1865, he was not bound to deliver any coal to the plaintiff under this contract, and that the reciprocal obligations to deliver and receive ceased at that time ; the plaintiff claims that whenever the defendant received coal from the company under his contract with them, he was entitled to demand and receive the same at his option.

The two writings signed by the parties and entered in their memorandum books, are not alike in language, but they substantially agree, and were made at the same time to express the terms of the contract. The former entry was made in the plaintiff's book with a pencil as they stood together and bargained on the bridge, and the latter a few minutes after when they entered the defendant's store, and there the terms were written out more distinctly and fully in his book with pen and ink. They were intended to be originals not copies, and are to be construed together to arrive at the intention of the parties.

Taken together they constitute an agreement for the sale and purchase of three boat loads of coal (about 200 tons,) at five dollars and sixty-five cents ($5.65) per ton, to be delivered from the mines in boats at Waterloo, upon the condition that the Del., Lack. & Western Railroad Company deliver the coal to the defendant, Samuel T. Smith, agreeably to the terms of their contract with him. The contract with the company is based on the offer of B. S. French, agent, dated July 11th, 1865, with the time of acceptance extended to July 30th, the acceptance of which formed the agreement ;

and this offer is incorporated into the condition of the contract between the plaintiff and defendant.

The condition would then be, provided the Del., Lack. & West. Railroad Co. make *immediate delivery* of 500 tons or more of coal to Smith at Waterloo, at $5.25 per ton. The words "immediate delivery" in ordinary language mean to deliver forthwith; but this expression is explained in the testimony as having a trade meaning among coal shippers and dealers, to which latter class the plaintiff and defendant belong. It means a delivery during the current month in which the offer is made and accepted, unless the contract is made on the last day of the month, or within such limited time that it cannot be shipped, and then the whole of the following month may be given. According to this interpretation, the contract between the Del., Lack. & West. Railroad Co. and Samuel T. Smith having been made July 28th, 1865, an immediate delivery would be extended through the following month of August. As the company had that time to deliver to Smith, the defendant, so by the condition of his contract with Neldon he had the same time to deliver coal to him at Waterloo, and Neldon was bound to receive it if delivered within that time. If however another construction of this contract is made, and it should be held that Neldon only agreed to take the coal according to the offer of July 11th, which limited an acceptance to the 20th inst. without the extension given to the 30th, and that an immediate delivery must be construed to be within that month, then neither party would be bound beyond that time. In either case, the sale of coal was made upon a proviso or condition that it should be delivered within a certain time and for a certain price. If the company delivered to Smith within the time and for the price stipulated he was to deliver to Neldon under their contract, and Neldon was bound to receive the coal. If however the company failed to deliver to Smith within the time and for the price stipulated, he was free from his obligation to deliver, and Neldon was free from his

promise to receive. The condition affects the obligation of each party, and is reciprocal.

The cases relating to goods sold on condition to arrive were elaborately cited and reviewed by the counsel in their arguments before the court. The conclusion to which we must come, after a careful examination of these cases is, that a sale to arrive is conditional, and that if the article contracted for does not arrive, either from the vessel being lost or other cause by accident, and without any fraud or fault of the vendor, the contract is at an end. The contract is executory, and does not pass the property in the goods to arrive. It is merely an agreement for the sale and delivery of the articles named, at a future period when they shall arrive. It is in the nature of a condition and not a warranty. *Boyd* v. *Siffkin*, 2 *Camp.* 326; *Johnson* v. *McDonald*, 9 *M. & W.* 600; *Lovatt* v. *Hamilton*, 5 *Ib.* 639; *Gorrissen* v. *Perrin*, 4 *C. B.* (89 *E. C. L.*) 681; *Hale* v. *Rawson*, 4 *Ib.* (93 *Ib.*) 85; *Russell* v. *Nicoll*, 3 *Wend.* 112; *Shields* v. *Pettee*, 2 *Sandf.* 262; *S. C.*, 4 *Comst.* 122; *Davis* v. *Shields*, 26 *Wend.* 341; 1 *Pars. Cont.* 552, and notes.

The same principles of law are applicable to this case, as it is an agreement to sell upon an express condition. The difference between the cases cited and the different results arrived at in the courts, which are sometimes nice and quite close, are referable to the exact terms of the contract, which must control the usual form and the construction of such bargains.

The argument of the plaintiff's counsel that this condition, if it be such, to deliver within a certain time was for the benefit of the plaintiff, and that he only could avoid having an election, is based upon other facts, and another principle of law applicable to those facts. The performance of the stipulation, where it is held a party has an option, depends on the acts of the parties themselves, and not upon the acts of others over whom they have no control. If either party therefore fail to perform, he would, by his own act, defeat the condition, and have the benefit of his own wrong. Take as

an illustration the case of *Campbell* v. *Westcott*, 5 *Cow.* 270.
In articles for the sale of land by which the vendee covenants
to pay and the vendor covenants to convey on payment, and
the vendee agrees that if he fails in his covenant the contract
shall be void; or there is a general proviso that if the vendee
do not perform it shall be void, here the contract is voidable
only at the election of the vendor.

The reason is obvious. The vendee, by his own default,
his refusal to pay, may defeat the contract and annul the sale.

The court held in that case that on the vendee's default to
pay, the vendor might consider the agreement void at his own
election, or affirm it, and bring his action on the covenants.

To the same effect are the authorities cited in the notes to
this case. See also *Rede* v. *Farr*, 6 *M. & S.* 121; *Taylor's
Landlord and Tenant* 492.

The case now under consideration differs, because the con-
dition here is if the railroad company, a third party, with
whom the vendor had contracted for coal, shall deliver it to
him at a certain time and for a fixed price, he will sell and
deliver to the vendee. This, as has been already said, is not
a warranty that he will deliver, but a condition. It is also a
condition based on the act of another, and if that other party
fail to deliver without the fault of the vendor, the contract
falls. The terms of the condition and of the sale are not for
the benefit of either party in exclusion of the other. It is
not an indifferent matter to the defendant when he shall
receive and deliver the coal. The price and time are both
made essential by the terms of the condition, and by the facts
of the case. If the goods are delivered at a different time,
or at a different price than the one stipulated for, the situation
of both parties is changed. The value of the article con-
tracted for has probably increased or diminished, and if this
be so, neither party should be able to hold the other to a
performance against the plain intent of the agreement. It is
only where the sale is absolute, and the title to the property
passes by the agreement, or where it is construed as a warranty
that this consequence follows. In *Russell* v. *Nicoll*, 3 *Wend.*

112, a contract was made in the city of New York for the
sale of 500 bales of cotton, to be delivered, on its arrival at
New York from New Orleans, at any time between the date
of the contract, February 9th, and the first day of June
thereafter, to be paid for in cash on delivery, the cotton to be
weighed, &c.   This was held to be an executory contract,
and the title to the cotton did not pass.   It was also said that
the actual transfer of the property contracted to be sold
depended upon the arrival of the cotton at New York, *an
event not absolutely in the control of either party*, and which
might never happen.   The period for its delivery, on condi-
tion of its arrival, was also fixed, that the parties might know
how long they were to remain under the stipulations of the
contract.

The difference between the construction put upon the con-
tract by the plaintiff and defendant, appears to be this : the
one interprets it without the condition and the other with it.
If the sale stood upon the first sentence· as entered in the
plaintiff's book, and signed by both parties, thus : " I agree
to take from S. T. Smith, three boat loads of coal, delivered
at Waterloo, for $5.65–100, to be either egg or stove, as soon
as coal is delivered from the mine from this date, July 29th,
1865," he would be clearly right,· and entitled to the coal
when delivered from the mine.   But when the condition is
added, " said Neldon is to take it in boats at Waterloo, and
does not bind said Smith unless Delaware, Lackawanna and
Western Railroad Company deliver the coal to him as per
offer of B. S. French's, per letter of July 11th, 1865," and
when that offer is of " 500 tons or more for immediate de-
livery at $5.25 at Waterloo," he is not entitled to the coal
unless there is an immediate delivery, as explained, at the price
and place named.

It is not said that if they deliver at any time under the
contract, but if they make immediate delivery.   The· entry
in defendant's book states more explicitly that the coal was
to be delivered agreeable to price *and conditions*.

There is a mistake also in saying that the coal delivered in

October and November, after the strike had ended, was delivered under the contract between Smith and the railroad company. It is true that it is so stated by Smith in his testimony, but he also calls it a compromise. The facts show that the company gave notice to Smith by a circular, dated September 27th, 1865, that they cancelled their obligation to deliver coal under their offer of July 11th, 1865 (by mistake called therein, August 20th, 1865). Smith went to their office in New York and insisted that they were bound to deliver; the company claimed that by their terms and customs and the rules of trade, in consequence of the strike, the contract was annulled. Smith threatened to sue for damages. The price had advanced, and Smith proposed to take the difference in satisfaction of damages, and finally he says: "We came to a compromise, and he (Sykes, vice-president of the company,) ordered Mr. French to ship to me the coal to satisfy me, and satisfied my claim."

After the company failed to make immediate delivery of the coal, Smith's claim against them was for damages for non-delivery. If in settlement they agreed to enlarge the time for delivery and acceptance, it was a new contract; but it was within the statute of frauds, as it was not in writing, and could not be enforced while it remained executory. *Addison on Cont.* 236; *Swain* v. *Seamens,* 9 *Wall.* 272; *Marshall* v. *Lynn,* 6 *M. & W.* 109; *Moore* v. *Campbell,* 10 *Ex* 323.

When the coal was accepted by a parol agreement made after the breach, it was by way of accord and satisfaction of the damages growing out of the breach of the former contract, and not a performance of that contract. There has therefore been no delivery under that contract. By this arrangement, the boat load (66 2-10 tons,) shipped July 18th, 1865, ten days before the contract was made between Smith and the company, was accepted as part of the quantity to be delivered, and in October and November 465 or 467 tons more were shipped and received, all for the price named in the former contract, so that both the time was enlarged for delivery and the quantity was increased more than thirty tons.

When the first boat load had been shipped from the mines, October 7th, and when the whole amount had been delivered, on November 30th, the defendant Smith was not in a position to compel the plaintiff to accept the three boat loads he had bargained for, because he had never contracted to accept the coal which might arrive under any subsequent contract, compromise and settlement, which might grow out of the non-performance of the original contract with the company. Neither can he, when the price of the coal has risen, call upon the defendant to deliver, and claim damages for non-delivery, when the defendant has received the coal long after the time named in their contract. There must be mutuality in the obligation between the parties.

This conclusion settles the rights and duties of the parties under the contract in controversy, and renders it unnecessary to express any opinion on the rulings at the trial in the admission or rejection of evidence.

The postscript at the bottom of the entry in the defendant's book, which was below the date and the signatures of the parties, was excluded at the trial, on motion of the plaintiff's counsel, because it could only be connected with the writing above the signatures and date by parol proof. If it had been admitted, I think it would not have changed the result which has been reached.

It is not therefore necessary to express any opinion upon this point, and none is given. It is not within the ruling of this court in *Johnson* v. *Buck*, 6 *Vroom* 338, where the papers were separate and distinct, and the attempt was to connect them by parol proof, and is not free from doubt.

The legal position of the parties was not changed by the letters and conversations between them about September 1st, giving notices and making counter claims under the contract. By its own terms it had then ended.

The verdict is set aside, and a new trial granted.